Howard M. STRINGFELLOW, John D. McDonald, C. D. Phillips, George N. Hudson, Leonard B. Wells and Lavelle L. McGaugh, Plaintiffs,

v.

MONSANTO COMPANY, Defendant.

No. ED 69–C–48.

United States District Court,
W. D. Arkansas,
El Dorado Division.

Dec. 29, 1970.

---

John P. Sizemore, Youngdahl, Sizemore, Brewer, Forster & Uhlig, Little Rock, Ark., for plaintiffs.

William J. Wynne, Crumpler, O'Connor & Wynne, El Dorado, Ark., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

The plaintiffs bring this action against the defendant, Monsanto Company (hereinafter referred to as Monsanto), under the provisions of the newly enacted Age Discrimination in Employment Act. Pub.L. 90–202, Dec. 15, 1967; 81 Stat. 602; 29 U.S.C.A. § 621 et seq. No other case brought pursuant to this Act has been cited and the Court does not know of any proceedings heretofore involving the Age Discrimination in Employment Act.

Each of the plaintiffs is an employee within the meaning of Section 11(f) of the Age Discrimination in Employment Act, 29 U.S.C.A. § 630(f).[1] The plaintiffs have been long-time nonbargaining unit employees of Monsanto. They contend that their employment was terminated by the company which resulted in discrimination in violation of the Age Discrimination in Employment Act. Each of the plaintiffs is and was at all times material to these proceedings at least forty years of age, but less than sixty-five years of age.

The Defendant Monsanto is an employer within the meaning of Section 11(b) of the Act, employing more than twenty-five employees. 29 U.S.C.A. § 630(b).[2] The defendant is a corporation engaged in business in numerous places of the United States of America, and elsewhere, including El Dorado, Union County, Arkansas, where the plaintiffs have been employed giving rise to this action.

The plaintiffs were involuntarily terminated effective May 1, 1969, and each qualified for and are presently receiving early retirement benefits pursuant to the Employee Benefit Plan of Monsanto. They were salaried employees and seek reinstatement, wages from date of dis-

---

1. 29 U.S.C.A. § 630. Definitions

  *   *   *   *   *

 (f) The term "employee" means an individual employed by any employer.

  *   *   *   *   *

2. 29 U.S.C.A. § 630. Definitions

  *   *   *   *   *

 (b) The term "employer" means a person engaged in an industry affecting commerce who has twenty-five or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year: Provided, That prior to June 30, 1968, employers having fewer than fifty employees shall not be considered employers. The term also means any agent of such a person, but such term does not include the United States, a corporation wholly owned by the Government of the United States, or a State or political subdivision thereof.

  *   *   *   *   *

charge, damages, costs and attorney's fees.

The required notice of intent to file this action was given the Secretary of Labor pursuant to 29 U.S.C.A. § 626(d).[3]

This Court has jurisdiction over the parties and the subject matter of this cause of action. 29 U.S.C.A. §§ 211(b), 216 (except subsection (a) thereof), 217 and 626(c).[4]

Plaintiffs allege that Monsanto discharged them and has failed and refused to remploy them and thus discriminated against them because of age. Each plaintiff testified concerning his length of service, plant experience, performance and training and that the allegation of age discrimination was based upon the fact that certain younger employees were retained. In support of their contention various charts and exhibits were introduced for the purpose of indicating the relationship of the ages of the plaintiffs to certain other employees.

Defendant denies having wilfully violated the Act and the commission of any act of discrimination against the plaintiffs because of their age or otherwise. Witnesses appearing on behalf of the defendant testified that economic factors required Monsanto to reduce substantially the nature, scope and extent of such chemical plant facility with the resultant effect of requiring the elimination of a large number of preexisting jobs and a substantial reduction in the number of its employees. It is the contention of Monsanto that the ultimate decision to effect such reduction was made in the early fall of 1968, at which time the method of implementing such plan was formulated. In conformity therewith, the plant manager testified that he instructed the Superintendents of Maintenance, Manufacturing and Personnel to forecast their respective departmental employee requirements following such substantial shutdown and to formulate a plan of evaluation of each employee in order that those persons retained would be most capable and competent to perform the jobs remaining.

The facilities at Monsanto's El Dorado plant for manufacturing urea, ammonia, and nitrogen solutions were shut down and abandoned in their entirety. In addition, portions of the power section, water section, ammonia storage and shipping section were likewise reduced. The abandonment and plant shutdown of this magnitude necessarily eliminated previously existing jobs not only within these assigned areas, but in those related service units of the plant facility. As a result, the required reduction in

---

3. 29 U.S.C.A. § 626.

\* \* \* \* \*

(d) No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

(1) within one hundred and eighty days after the alleged unlawful practice occurred, or

(2). in a case to which section 633(b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Upon receiving a notice of intent to sue, the Secretary shall promptly notify all persons named therein as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

\* \* \* \* \*

4. 29 U.S.C.A. § 626.

\* \* \* \* \*

(b) The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except subsection (a) thereof), and 217 of this title, and subsection (c) of this section.

\* \* \* \* \*

(c) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: Provided, That the right of any person to bring such action shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this chapter.

the employee complement could not be accommodated by normal attrition. Such reduction resulted in the elimination of two hundred eight hourly jobs of a total of four hundred nineteen and the termination of forty-seven salaried employees of a group of one hundred nineteen. Plaintiffs were employed within such latter group. Four of them, C. D. Phillips, John D. McDonald, Howard M. Stringfellow and Leonard B. Wells, were classified as shift foremen and the remaining two plaintiffs, Lavelle L. McGaugh and George N. Hudson, were classified as guards.

In conformity with the instructions that such superintendents received, the Superintendent of Manufacturing formulated a plan of employee evaluation utilizing techniques and criteria for determining the degree of individual job performance from materials published by the American Management Association and other similar recognized sources which were obtained and studied during the course of management seminars which such supervisory personnel had attended. A similar technique was utilized by the Superintendent of Maintenance.

The plan of evaluation as formulated by the Superintendent of Manufacturing was distributed to the Supervisors of the Ammonia Area, the Supervisor of the Acid and Solutions Area and to the Supervisor of the Fertilizer Area, in order that each such supervisor might respectively evaluate all salaried personnel subordinate to them. The individual evaluations of job performance of each employee was made on the basis of eighteen criteria. These evaluations were then reviewed by such Supervisors with the Superintendent of Manufacturing and he then undertook to analyze, correlate, compile and prepare a summarization of the performance evaluation of each salaried employee in the Manufacturing Department. A copy of that summary listing the names of each of the twenty-two employees who were so evaluated in the Manufacturing Department and the respective ratings which each such employee obtained pursuant to such plan of evaluation was introduced in evidence. Based upon that evaluation, the Superintendent of Manufacturing recommended to the Plant Manager the names of the twelve employees who should be retained for the jobs remaining in the Manufacturing Department after plant shutdown and the names of the ten employees who should be terminated. The Plant Manager testified that he concurred in those recommendations. The ratings of the plaintiffs, McDonald, Stringfellow, Phillips and Wells were shown in comparative form with all salaried employees in the Manufacturing Department who were evaluated pursuant to said plan and on the basis of that evaluation, these four plaintiffs were terminated. Only one of such twenty-two persons evaluated in this manner was under the age of forty. The remaining twenty-one were within the age group of forty to sixty-five years.

As a result of such substantial reduction, it was further determined that two guards would no longer be required of the four guards previously employed. The Superintendent of Personnel testified that he determined from his discussions with the Supervisor of Safety, to whom such guards reported directly, that firefighting skill, experience and ability were the essential factors upon which the guards should be evaluated in view of the change of responsibilities in this job classification which would occur following plant shutdown. On that basis, plaintiffs, Hudson and McGaugh, were terminated. It was undisputed that guards implemented the firemen in firefighting when the necessity arose and that guards received fire training in their employment. These training sessions were, however, conducted by firemen who were primarily responsible for and in control of the firefighting equipment at the plant. While guards were available to assist firemen in firefighting, guards were not included upon the emergency callout list in the event an emergency occurred. A list of the four

firemen and the four guards who were evaluated in this manner was introduced during the course of the trial. The basis of such evaluation on firefighting skill, experience and ability and the names of the persons to be retained for the jobs remaining following such plant reduction were similarly reported to the Plant Manager who testified that he concurred therewith. All eight of the persons evaluated in this manner were within the age group of forty to sixty-five years.

A plan of evaluation similar to that utilized in the Manufacturing Department was formulated by the Superintendent of Maintenance for purposes of evaluating the job performance of all employees within the Maintenance Department. On this basis, twenty-two employees were evaluated from which nine were selected for termination on the basis of job performance. Only two of these twenty-two employees were under the age of forty and the remaining

twenty were within the age group of forty and sixty-five years. Of the nine selected for termination, one was under the age of forty and the remaining eight were within the age group of forty to sixty-five years. In like manner, the Superintendent of Maintenance reported to the Plant Manager the names of the persons to be retained for the jobs remaining and he testified that he concurred therewith.

The purpose of the Age Discrimination in Employment Act is expressed in the statement of Congressional intent in 29 U.S.C.A. § 621.[5] Congress in its findings and declarations observed the significance of both *potential for job performance* and the *employment* of older persons *based on* their ability. The prohibition of such Act is aimed at arbitrary age discrimination in employment.[6] Congress in its wisdom, provided not only the acts prohibited but practices declared to be lawful.[7]

5. 29 U.S.C.A. § 621.
    (a) The Congress hereby finds and declares that—
        (1) in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs;
        (2) the setting of arbitrary age limits regardless of potential for job performance has become a common practice, and certain otherwise desirable practices may work to the disadvantage of older persons;
        (3) the incidence of unemployment, especially long-term unemployment with resultant deterioration of skill, morale, and employer acceptability is, relative to the younger ages, high among older workers; their numbers are great and growing; and their employment problems grave;
        (4) the existence in industries affecting commerce, of arbitrary discrimination in employment because of age, burdens commerce and the free flow of goods in commerce.
    (b). It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimina-

tion in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

6. 29 U.S.C.A. § 623(a) (1).
    (a) It shall be unlawful for an employer—
        (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
        \*      \*      \*      \*      \*

7. 29 U.S.C.A. § 623.
    (f) It shall not be unlawful for an employer, employment agency, or labor organization—
        (1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age;
        (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no

Only three employees of the fifty-two evaluated within the Maintenance, Manufacturing and Personnel Departments were under the age of forty years (one of whom was terminated as a result of such plant reduction) and the remaining forty-nine, therefore, fell within the limits of the Age Discrimination in Employment Act by virtue of the following provisions:

§ 631. Age limits

The prohibitions in this chapter shall be limited to individuals who are at least forty years of age but less than sixty-five years of age.

The El Dorado, Arkansas, plant facility was constructed as a defense plant during the early days of World War II. Monsanto has since succeeded to the ownership and operation thereof. Many, if not the majority, of the employees went to work at such facility when it was operated as a defense plant. This fact is established from exhibits introduced which reflect the average age of salaried employees before and after shutdown within the respective departments, as follows:

|  | Average Age Before Shutdown: | Average Age After Shutdown: |
| --- | --- | --- |
| Maintenance Department | 48.4 years | 47.3 years |
| Manufacturing Department | 52.5 years | 51.5 years |
| Personnel Department | 53.6 years | 52.5 years |

The facts as shown by exhibits of the parties with reference to age, position and years of employment are not in dispute; it is the method employed and the application thereof which resulted in age discrimination as argued by the plaintiffs. No question is raised as to their records or satisfactory performance of their duties. In fact, some have received periodic "merit" increases.

As the Court views the primary issue, the plaintiffs argue and insist that termination should have been determined on the basis of seniority and the defendant contends that their plan of evaluation of job performance was in keeping with the intention of the Congress in the enactment of Age Discrimination in Employment Act of 1967.

From the testimony, the witnesses on behalf of Monsanto explained that the company formulated a plan for evaluation for determining and selecting terminees under a method of differentiation based upon what was referred to as reasonable factors other than age. The plan of evaluation utilized by Monsanto was to differentiate in their selective personnel on the basis of performance and ability to perform the jobs remaining after plant reduction and shutdown of some of its operation.

All employees who were terminated as a result of plant reduction and shutdown were given an opportunity to receive an explanation as to the reasons for their termination and an opportunity for review of the evaluation made of their job performance. There was dispute over some evaluations on review, but according to the testimony of the Supervisor of Personnel, an effort was made to avoid the economic impact insofar as possible upon those terminated by the establishment of a placement program. Inquiries were made of other facilities of the defendant in an effort to determine if employee transfers could be effected and interviews were arranged with representatives of other companies. The result of this effort was not included in the record and there was no explanation as to whether or not either of the plaintiffs attempted to take advantage of the company's placement program.

The method of the company's impartial evaluation of the ability and job performance of each of the plaintiffs and other employees evaluated by Monsanto was based upon established factors and criteria ordinarily utilized for such purpose. The Court concludes that the differentiation resulting from the application of such factors and criteria in the plan of evaluation which Monsanto used was based on reasonable factors other than age and in the opinion of the Court

such employee benefit plan shall excuse the failure to hire any individual; or

(3) to discharge or otherwise discipline an individual for good cause.

constitutes a lawful practice envisioned under 29 U.S.C.A. § 623(f).

I find that Monsanto's action in this difficult task was reasonable and not a willful discriminatory act which the Congress sought to prevent by the adoption of this program. The action of the company was not a willful discharge of the older employees and employment of younger personnel, but was an act made necessary by reduction in plant operation and, therefore, personnel. I do not choose to think that Congress intended to invade the prerogative of the company in its differentiation of personnel under the facts presented in this record.

I further conclude that Monsanto also observed the terms of a bona fide Employee Retirement Benefit Plan which in my judgment did not constitute a subterfuge to evade the purposes of the Age Discrimination in Employment Act.

It should be noted that the Act makes no provision for the imposition of attorney's fees. It provides specifically that liquidated damages shall be payable only in cases of willful violation thereof.

The case was tried to the Court and from ore tenus testimony of witnesses, exhibits and briefs filed by respective counsel, and pursuant to the statement herein, and the entire record, the Court finds as follows:

### 1.

Each plaintiff is an employee within the definition of Section 11(f), 29 U.S.C.A. § 630(f) and within the age limits prescribed within Section 12, 29 U.S.C.A. § 631 of the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 621, et seq.

### 2.

The defendant, Monsanto Company, is an employer within the definition of Section 11(b), 29 U.S.C.A. § 630(b) of said Act.

### 3.

The required notice of intent to file this action was given the Secretary of Labor within one hundred eighty days after the alleged unlawful practice occurred.

### 4.

The Court has jurisdiction over the parties and subject matter of this casue of action under the provisions of Section 7(c) of the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 626(c).

### 5.

Economic factors required Monsanto to reduce substantially the nature, scope and extent of its chemical plant facility located at El Dorado, Arkansas, with the resultant effect of requiring the elimination of a large number of preexisting jobs and a substantial reduction in the number of its employees.

### 6.

Plaintiffs were involuntarily terminated and each qualified for and are presently receiving early retirement benefits pursuant to the Employee Benefit Plan of Monsanto Company.

### 7.

A plan of evaluation of each employee was formulated, utilizing accepted and recognized techniques and criteria in order to determine those employees most capable and competent to perform the jobs remaining following such plant reduction and shutdown.

### 8.

The differentiation resulting from the application of such factors and criteria in the plan of evaluation which Monsanto Company utilized was based on reasonable factors other than age and con-

**1182**

stitutes a lawful practice envisioned under 29 U.S.C.A. § 623(f).

**9.**

Monsanto Company further observed the terms of a bona fide Employment Retirement Benefit Plan which did not constitute a subterfuge to evade the purposes of such Act. 29 U.S.C.A. § 623(f)(2).

## CONCLUSIONS OF LAW

**1.**

The differentiation resulting from the application of the factors and criteria utilized by the defendant in the plan of employee evaluation was based on reasonable factors other than age and constitutes a lawful practice under the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 623(f).

**2.**

The act of the defendant in terminating the employment of plaintiffs was not unlawful and did not violate the Age Discrimination in Employment Act of 1967, 81 Stat. 602; 29 U.S.C.A. § 621, et seq.

**3.**

Defendant did not discriminate against plaintiffs, or any one or more of them, because of age, in their selection for termination.

**4.**

The defendant observed the terms of a bona fide Employment Retirement Benefit Plan which did not constitute a subterfuge to evade the purposes of the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 623(f)(2).

Any conclusions that may be incorporated in the findings of fact will be considered together as findings of fact and conclusions of law in compliance with Rule 52 of the Federal Rules of Civil Procedure.

An order will be entered in accordance with this opinion.