For the reasons set forth above, it is hereby Ordered as follows:

1. The plaintiff's request for entry of final judgment is Denied, without prejudice, until the defendants are offered an opportunity to be heard as to the knowing and voluntary character of their waiver.

2. For want of a better format, this hearing may be initiated by the plaintiff filing a motion to show cause why this action should not proceed as a confession judgment. Since the defendant has already been served, a copy of this motion, together with a copy of this Opinion, may merely be mailed to him at the best available address. Since the defendant has not retained his own counsel for purposes of this motion, however, he should have the motion in hand twenty days before this matter is heard.

3. The power of attorney, previously signed, is reformed to provide for a reasonable attorney's fee.

Charles E. **SCHULZ**

v.

**HICKOK MANUFACTURING CO., INC.**

**Civ. A. No. 15131.**

United States District Court,
N. D. Georgia,
Atlanta Division.

May 4, 1973.

---

7. It is often easier to light on the proper doctrine by visualizing extreme factual situations. If the contract had called for "liquidated damages" of twice the face amount due, I do not believe any court would countenance that term—even if confession judgment were otherwise proper and the confessing attorney did not challenge it.

Morris, Etheridge, Redfern & Butler, Atlanta, Ga., for plaintiff.

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendant.

## ORDER

RICHARD C. FREEMAN, District Judge.

This action was brought by plaintiff under the provisions of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634. Jurisdiction is founded on 28 U.S.C. § 1331 and 29 U.S.C. § 626(c). Plaintiff complains that he was discharged from his job with defendant because of his age, which was 56 at the time of his discharge. By this action plaintiff seeks reinstatement and back pay, plus liquidated damages for willful violation of the Act. A non-jury trial has been held and the case is ready for decision on the merits.

Plaintiff was first employed by the defendant in October, 1942, and from that date until February 23, 1953, served as a salesman. From February 24, 1953, until the date of his discharge, plaintiff was employed by defendant in the capacity of District Sales Manager. In this capacity plaintiff was responsible for the sales maintenance and sales budgets, development of new business, continual training, hiring, firing, evaluation and supervision of salesmen. Plaintiff was also to make sure that salesmen under him made calls on customers on a regular basis, and he was re-

quired to submit weekly reports on his own activities, as well as those of the salesmen in his area who, in turn, were to submit reports to him. As district manager, plaintiff was expected to spend a minimum of four to four and one-half days per week in the field and to apprise the National Sales Manager, Harry McLean, of any new problems or developments in his area.

Plaintiff was discharged from his job on November 16, 1970.

It is clear from the testimony at trial that the defendant company was in serious financial trouble in 1970. It had lost money every year since 1965 and in 1969 had lost over a million dollars. In February, 1970, the company underwent a substantial change in ownership and management with the Hickok family interests being taken over by the Parker interests. Mr. P. J. Parker assumed at that time the presidency of the corporation.

In the summer of 1971 the defendant again underwent a substantial change in which the Parker interest in defendant was taken over by Tandy Corporation.

Plaintiff contends that his discharge by defendant was because of his age. Principal support for his claim derives from a remark made to him in late August, 1970, by Harry McLean, National Sales Manager and plaintiff's immediate supervisor.[1] Plaintiff, McLean and Harry Bock, Vice-President of Marketing and McLean's supervisor, had been on a trip of several days visiting accounts in plaintiff's district. During the course of this trip plaintiff had sensed dissatisfaction with his job performance and there had been some discussion of a particularly troublesome account in plaintiff's district, Burdine's in Miami. During the trip there was mention of plaintiff's possible transfer to another position in the company. Plain-

tiff told McLean and Bock that he would be willing to accept a job change.

On or about August 27, 1970, as they were walking from one store to another in Atlanta, Georgia, in response to inquiries about why defendant would want to place him in a different job, McLean told the plaintiff that the company "wanted younger and new people." No one except plaintiff and McLean participated in or overheard this conversation.

On November 13, 1970, less than two months after this conversation McLean telephoned plaintiff and told him that he was being terminated. The reason given at this time for the termination was that plaintiff "should be doing more business." On November 16 plaintiff met with McLean and Bock and the explanation for the termination was again that plaintiff "should be doing more business." McLean and Bock refused to discuss the reasons for termination any more fully. No offer was made to plaintiff of another position within the company. At this meeting plaintiff expressed his concern that it would be difficult for him, at his age, to find suitable employment. Bock disagreed that plaintiff would face such problems. Plaintiff never received any letter from the defendant giving him official notice of his termination or of the reasons therefor.

At the November 16 meeting with McLean and Bock, plaintiff was promised that he would receive certain benefits from the company, including a portion of his pension, certain insurance, health insurance at one-half cost and severance pay. Only the severance pay has actually been received by plaintiff. All pensions were cancelled by the company at some point after plaintiff's discharge.

Plaintiff's claim of age discrimination was buttressed by the deposition of

---

1. Harry McLean was killed in an airplane crash on January 18, 1972. Defendant has objected strenuously to the introduction into evidence of testimony of any conversations with McLean. By an order entered December 6, 1972, the court overruled these objections; the objection has been preserved by defendant.

Theodore Salomon. Salomon, whose date of birth was March 18, 1921, served as a District Manager until he became a Key Salesman for defendant's Pioneer Line in June or July of 1970. He was discharged by defendant on October 28, 1970, at the age of 49. He testified that McLean informed him of his discharge while they were walking along the street in New York. In response to Salomon's question as to the reason for the termination, McLean stated, "I don't know. Call it their youth movement."

▇ Defendant has vigorously objected to this testimony on the grounds of relevance and hearsay. Defendant argues that the testimony is not relevant because this is neither a "pattern and practice" action brought by the government nor a class action. While it is true that the only question in this action is whether defendant discriminated on the basis of age in its discharge of one particular employee, plaintiff Schulz, evidence of the defendant's behavior in similar cases is decidedly relevant to the court's determination of the reasons behind plaintiff's discharge. Thus in Danner v. Phillips Petroleum Co., 447 F.2d 159 (5th Cir. 1971), reh. den. 450 F.2d 881, in an individual and not a class action, evidence concerning the seniority and bidding rights of other female employees of the defendant company was found to be not only relevant but also very persuasive evidence bearing on plaintiff's claim under Title VII.[2]

In the present case the testimony of Salomon is especially relevant because of the striking similarity between the circumstances under which Salomon and the plaintiff were informed by McLean of their discharges and because of the similarity of the comments which he made to each of them. The remark to Schulz was made in late August, 1970; Salomon was informed of his discharge by McLean in late October, 1970.

▇ While defendant argues that the testimony of Salomon is inadmissible hearsay, it is clear that the statements of a deceased agent are admissible against his principal. Ga.Code Ann. § 4–315. Also, statements against interest are admissible as an exception to the hearsay rule. Ga.Code Ann. § 38–309. The statement of McLean to Salomon is not excluded by the Georgia Dead Man Statute, the relevant portion of which, Ga.Code Ann. § 38–1603(4) provides as follows:

> 4. Where a person not a party, but a person interested in the result of the suit, shall be offered as a witness, he shall not be competent to testify, if as a party to the cause he would for any cause be incompetent.

However, Salomon clearly has no legal, financial or other interest in the outcome of this case which would bring him within the ambit of the Dead Man Statute.

▇ Defendant argues that even if the testimony could be held to come within one of the exceptions to the hearsay rule it should not be admitted because it lacks trustworthiness. The court disagrees. The court finds evidence of the trustworthiness of this testimony from a letter which was admitted into evidence as plaintiff's exhibit # 42. This is a letter to Schulz from Salomon, dated November 10, 1970, only a short time after the conversation in which McLean told Salomon that he was being discharged by the defendant and long before the accidental death of McLean. The fact that Salomon's statement in this letter is substantially identical to Salomon's testimony on deposition is weighty evidence of the trustworthiness of the testimony.

▇ Defendant's final objection to the testimony of Salomon is based on defendant's contention that McLean had no authority to make such a statement and

---

2. Because of the similarities between the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964 (*See* Hodgson v. First Federal Savings & Loan Association, 455 F.2d 818 (5th Cir. 1972)), analogies to Title VII cases are often helpful in age discrimination cases.

that such a statement, if made, did not accurately reflect the true policy of the company in regard to age. Without discrediting the testimony of P. J. Parker, President of Hickok, that McLean had not been authorized to make such statements to Salomon and Schulz, testimony regarding such statements is nonetheless relevant, for McLean might very well have been expressing his opinion as to the true, albeit unacknowledged, policy of defendant to discharge certain district managers because of age.

■ To establish a prima facie case, plaintiff also relies on statistics showing the ages of the district managers before the Parker interests took over Hickok and at the end of the Parker term of control of the company. Defendant has objected to the introduction into evidence of this statistical evidence but it is clear that such statistics are admissible in a Title VII action. *See* Rowe v. General Motors Corporation, 457 F.2d 348 (5th Cir. 1972); Mabin v. Siegler, Inc., 457 F.2d 806 (6th Cir. 1972); Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245 (10th Cir. 1970); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir. 1970); Stringfellow v. Monsanto, 320 F.Supp. 1175 (W.D. Ark.1970). Such statistics are therefore, by analogy, admissible in age discrimination cases. *See* fn. 2, *supra.* Defendant is of course correct, however, in stating that statistics are not conclusive proof of an employer's reasons for any particular discharge; they are relevant simply on the question of motive. Terrell v. Feldstein Co., Inc., 468 F.2d 910 (5th Cir. 1972).

The statistics, presented by plaintiff in a manner which is most favorable to his position, indicate that the average age of the eight district managers on February 27, 1970, the date of the Parker takeover, was 53.39. The average age of the seven district managers [3] on

July 30, 1971, the date of the Tandy takeover of the company, was 40.75. Thus within a period of eighteen months, the average age of the district managers had declined almost thirteen years. It should be noted that during this period every district manager was either fired, promoted or retired. This evidence clearly indicates that the effect of the Parker management changes at the district level was to bring in a group of managers who were considerably younger, on the average, than those whom they replaced.

Defendant seeks to diminish the effect of such evidence by pointing out that the average age of the district managers after the Parker term remained within the age group which is protected by the Act, those from ages forty to sixty-five. However, the steep decrease in the average age of the district managers indicates, as is substantiated by the individual figures, that several district managers within the protected group were replaced by men who were younger than the age group protected by the Act.[4]

■ As the court indicated at the time of trial, plaintiff has clearly made out a strong prima facie case through the testimony of plaintiff himself, the testimony by deposition of Salomon, and the introduction into evidence of the statistics discussed above. The law is well settled that in discrimination cases the burden then shifts to the defendant to establish that the discharge was for reasonable non-discriminatory reasons. Hodgson v. First Federal Savings & Loan Association, 455 F.2d 818, 822 (5th Cir. 1972). As the Fifth Circuit there held, "Once the plaintiff has made out his prima facie case we look to the defendant for an explanation since he is in a position to know whether he failed to hire a person for reasons which would exonerate him." In the present case, defendant is required to carry the burden

3. The job of one district manager had been eliminated during this period.

4. On February, 1970, all but one of the district managers were within the age group protected by the Act; in July, 1971, only three out of seven were within that age group.

of convincing the court that it discharged plaintiff for reasons other than age.

Section 4(f) of the Act provides as follows:

(f) It shall not be unlawful for an employer, employment agency, or labor organization—

(1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age.

.    .    .    .    .    .

(3) to discharge or otherwise discipline an individual for good cause.

Thus defendant has the burden of proving that plaintiff was discharged because of reasonable factors other than age or for cause. Failure to carry that burden must result in judgment for plaintiff.

Defendant's principal witness at the trial was P. J. Parker, president of the defendant company at the time of plaintiff's discharge. Parker testified concerning the financial difficulties of defendant at the time he assumed the presidency and of his plans to restore the company to a prosperous condition. He testified that his target for the calendar year 1970 was a 20% increase over 1969 in regular sales.

Parker testified that he had several conversations with McLean and Bock concerning Schulz and Schulz's district. It was felt that plaintiff's district had problems in terms of its market penetration and with some of its key accounts. Parker testified that he, McLean and Bock decided to ask Schulz to draw up a detailed program for dealing with the problems in his district. Parker was of course not directly involved in the communications with plaintiff concerning this program, but he did testify that at a meeting a month or six weeks later with McLean and Bock, they found that Schulz had not submitted a sufficient plan.

It was Parker's testimony that they then decided that McLean would draw up a plan for Schulz covering his visits in the field and other work so that it would be a simple matter for top management to see whether he was doing the job set out for him. There was apparently never any written statement made of this plan, and although Parker testified that McLean made handwritten notes of this conference, no such notes or any writing whatsoever referring to this plan has been submitted into evidence.

During the last week in October or the first week in November, Parker, McLean and Bock again met and discussed the plaintiff. According to Parker, McLean reported that Schulz was not meeting the plan which had been drawn up for him and that for that reason McLean recommended that Schulz be discharged. Parker stated that he, McLean and Bock had been very concerned about Burdine's, one of Schulz's key accounts, and that they were generally not satisfied with sales in plaintiff's district.

On the other hand, plaintiff testified that he was never asked to draw up a plan for his district and was never presented with a plan drawn up by McLean. Parker, not having dealt directly with Schulz himself, could not rebut the plaintiff's testimony. This points up one of the striking weaknesses of the defendant's case. McLean, plaintiff's immediate supervisor is dead. But Bock, who was with McLean during many of his conversations with Schulz regarding Schulz's future with the company, and who was in the meetings with Parker and McLean and might have corroborated much of Parker's testimony, if true, was not called to testify by defendant. The only explanation given for the failure to call Bock was that he is no longer with the company and that the separation was not on friendly terms.

The defendant's case is thus forced to rest on the testimony of Parker who, as president of the company, was not involved in the matters of the district managers on a day-to-day basis and whose information and directions were through the conduit of McLean and Bock. Parker has no personal knowledge whether or not McLean ever asked Schulz to draw up a plan for his district; the statement of Schulz that no such plan was requested of him thus stands essentially uncontradicted.

There was much testimony at trial concerning Burdine's, a store in Miami and one of the key accounts in plaintiff's district. There is no question but that this account was a matter of great concern, both to Parker, McLean and Bock and to Schulz. Numerous memos and conversations dealt with this subject. Plaintiff concedes that he was having difficulty with this account; however, the account was not lost so long as plaintiff was district manager but was eventually lost by Hickok.

In a situation such as this where the reasons for plaintiff's discharge are not satisfactorily explained by the oral testimony, the court is assisted in its inquiry by reference to the objective figures which reflect the performance of plaintiff as district manager. Both sides rely on these figures, drawing somewhat different inferences from them.

Plaintiff has drawn up, and submitted into evidence, a chart which shows sales in all districts for 1970, as compared to 1969, and for the first ten months of 1970, as compared to the same period in 1969. This chart shows that in 1970 net shipments of total sales for Schulz's district (the Atlanta district) were 13% above net shipments for 1969. In this respect, plaintiff's district ranked four out of seven districts. The company total showed an increase of only 11%.

In comparing the first ten months of 1970, that is, the period prior to plaintiff's discharge, to the same period in 1969, plaintiff's district showed an even greater increase. For that period, the Atlanta district was 29% ahead of the previous year's shipments; on this basis, plaintiff's district ranked three out of seven. The company total showed only a 23% increase, Thus in total net shipments both for 1970 as a whole and for the first ten months of 1970, plaintiff's district was doing better than the company as a whole.

The defendant argues, however, that total net shipments are not so significant as the shipments of "regular sales." The company carried three categories of products—regular sales, toiletry articles, and Sears sales. Of these three categories the regular sales produced by far the greatest profit for the company— 45% gross profit, compared to 19% and 25% gross profit for toiletry and Sears sales, respectively.

However, even in the area of regular sales plaintiff's district was doing at least as well as or better than the company as a whole. For 1970 plaintiff's district was running 2% behind in regular sales; the company's totals showed a similar decline compared to 1969, and of the seven districts, plaintiff's district ranked fourth. For the first ten months of 1970, the Atlanta district showed an increase of 11% in regular sales, compared to the company's increase of only 7%. In this respect, plaintiff was tied for third among all the districts.

As is indicated by the figures set forth above, the company did not meet the projections which had been established soon after the Parker takeover. While 1970 was a better year than 1969, the company lost about $700,000 during the calendar year. While plaintiff did not meet the projections set up for his district, he did do as well as or better than the company as a whole, both in total sales and in regular sales. In the context of a company which was in serious financial difficulty, due largely, no doubt, to factors far removed from and

far more basic than the performance of a single district manager, plaintiff's performance, as measured by the objective sales figures, was neither very good nor very bad. The company clearly had a need for a district manager who could break all previous records and generally do an exemplary job. There is no question but that Schulz's performance was not of that caliber. The crucial question in this case, however, is whether defendant has proved that it had cause or reasons other than age for discharging Schulz.

■ Defendant has failed to carry its burden of proving to the court that the discharge of plaintiff was based on reasonable factors other than age or was for cause. 29 U.S.C. § 623(f)(2) and (3). This conclusion is based on the evidence discussed above and also on the way in which the discharge of plaintiff was handled by defendant. Although plaintiff had been with the company since 1942, he was never, even after a specific request, given a formal letter of discharge setting forth the reasons for his termination. The comments by McLean and Bock that "you should be doing more business" are vague and unilluminating. While Parker emphasized that plaintiff had failed to draw up a satisfactory plan and had not followed the plan set out for him, there is no evidence that this failure was given as a reason for his discharge. And, although plaintiff had at one time been a prize-winning salesman and had told McLean and Bock that he would take another job within the company if necessary, no other job within the company was offered to plaintiff.

In Stringfellow v. Monsanto, 320 F. Supp. 1175 (W.D.Ark.1970), the court found that the discharge of the plaintiffs was based on reasonable factors other than age. In that case, however, the employer had gone through an elaborate evaluation of each employee based on certain factors which the employer found essential for the particular jobs.

The discharged employees were given an opportunity for review and explanation of their evaluations. The defendant thus had records which could be submitted to the court to substantiate the defense of discharge for reasonable factors other than age. In the present case the only evaluation of the plaintiff is the Management Performance Appraisal, dated October 15, 1970. Of the eleven categories evaluated in this report, Schulz was held to "meet all job standards" in eight categories, was found to exceed job standards in cost control and dependability, and was found below job standards in only one area, developing subordinates. The comments of McLean attached to the report state a more critical appraisal of plaintiff's job performance:

> Recommendation for removal seems to make comment on # 7 and # 6 unnecessary. Lack of mobility, energy and enthusiasm over too long a period made development of sales team very difficult. Key account development also poor.

This report was apparently written after the decision to terminate Schulz had already been made, and thus does not clearly reflect the reasons which led to the firing. Moreover, the comments made on this report do not correspond to the statement about doing more business which was given to Schulz as the reason for his discharge. On the evaluation categories plaintiff generally scored average or slightly above.

While the court finds this to be a rather close case, the established rule regarding the burden of proof in discrimination cases requires that judgment be for the plaintiff. Plaintiff established a strong prima facie case of age discrimination. Defendant has failed to carry the burden of showing that the discharge was for good cause or reasonable factors other than age. This failure is caused in part by defendant's inability on the one hand, and failure on the other, to have either McLean or Bock, the

two most closely involved with the discharge, to testify as witnesses for the defense. McLean is dead, but defendant has not put forth a satisfactory explanation for its failure to call Bock as a witness. The absence of Bock has left much of plaintiff's testimony without contradiction and has created a gap in defendant's testimony about the meetings of McLean, Bock and Parker concerning Schulz and the conversations between McLean, Bock and Schulz both prior to and at the time of plaintiff's discharge.

Accordingly, judgment is hereby entered for the plaintiff. Defendant is hereby ordered to reinstate plaintiff in his former position or in the position with the company which is most comparable to the job of district manager and to pay plaintiff the amount which plaintiff would have earned from the time of his discharge to the present, but for the discharge. The award of back pay is to be offset by the amount which plaintiff collected in umemployment benefits and by plaintiff's six weeks severance pay. Plaintiff is thus entitled to $49,000.00 for the two and one-quarter years since his discharge, less $1,300.00 in unemployment benefits, less $2,308.00 in severance pay, for a total of $45,392.00.

The court finds that plaintiff is not entitled to liquidated damages pursuant to 29 U.S.C. § 626(b) for willful violation of the Act.

Plaintiff is entitled to attorneys fees. Monroe v. Penn-Dixie Cement Corporation, 335 F.Supp. 231 (N.D.Ga.1971). Note: Age Discrimination in Employment Under Federal Law, IX Georgia State Bar Journal, 114 at 127 (August 1972). The court finds that $5,000.00 is a reasonable amount in attorneys fees.

Accordingly, the Clerk of Court is ordered to enter judgment for plaintiff in the sum of $45,392.00 for back pay and $5,000.00 as attorneys fees.

It is so ordered.