**James G. GILL**

v.

**UNION CARBIDE CORPORATION.**

**Civ. A. No. 8314.**

United States District Court,
E. D. Tennessee, N. D.

Dec. 19, 1973.

L. Anderson Galyon, III, Kennerly, Montgomery, Howard & Finley, Knoxville, Tenn., for plaintiff.

E. H. Rayson, Kramer, Dye, Greenwood, Johnson, Rayson & McVeigh, Knoxville, Tenn., G. Wilson Horde, Law Dept., Union Carbide Corp., Oak Ridge, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action is brought under the provisions of Section 7 of the Age Discrimination in Employment Act, Title 29 U.S.C. § 626, and Sections 11(b), 16 and 17 of the Fair Labor Standards Act, Title 29 U.S.C. §§ 211(b), 216 and 217.

It is the theory of plaintiff that he was terminated as an employee of the defendant on June 30, 1971 after some 24 years of service allegedly as part of a reduction in force due to budget cutbacks. Plaintiff says that his termination was in violation of the Age Discrimination in Employment Act in that the termination by defendant of plaintiff and other employees included considerations of age since most of the employees who were terminated were in the age group of from 40 to 65 years of age, of which group plaintiff was a member. Plaintiff at first contended that the violation was willful, but prior to trial requested that this allegation not be considered by the Court. Plaintiff further says that based on the violations of the

Act, he is entitled to reinstatement with back wages, company benefits and other incidents of employment that he enjoyed prior to termination.

Defendant denies that it discharged plaintiff because of his age. To the contrary, defendant contends that it terminated plaintiff on June 30, 1971 by reason of a reduction in force which was necessitated by valid economic considerations. Defendant further contends that each employee involved in the reduction was selected upon the basis of ability, effectiveness, versatility and other performance related considerations and that special consideration was given to those personnel over 40 years of age and with long company service for the sole purpose of retaining rather than terminating the employee. Defendant denies that plaintiff is entitled to the relief sought.

The issues for the determination of the Court, as formulated at pre-trial, are:

(1) Did the defendant discharge the plaintiff because of his age in violation of the Age Discrimination in Employment Act of 1967, Title 29 U. S.C. § 621 et seq.?

(2) If the answer to Issue No. 1 is "Yes", is the plaintiff entitled to reinstatement to his position with defendant and to damages including attorneys fees; and if so, what is the amount?

During the trial, the parties stipulated the following: The defendant is a New York corporation under contract with the United States Atomic Energy Commission and operates the following four government owned facilities as its Nuclear Division: Oak Ridge National Laboratory (ORNL); Oak Ridge Gaseous Diffusion Plant; Oak Ridge Y–12 Plant, all at Oak Ridge, Tennessee; and the Paducah Gaseous Diffusion Plant at Paducah, Kentucky. The Nuclear Division has approximately 13,000 employees at Oak Ridge, and ORNL is one of the world's largest research and development centers with a mission that encompasses all fields of science and technology. ORNL's broad program areas and its budgets are determined by the AEC. In 1971, it had approximately 4400 employees.

It is further stipulated that the 1971 reduction in force at ORNL was necessitated by valid economic considerations. As in prior years, budgetary reductions determined and conveyed to defendant by the AEC required the reduction of the number of employees at ORNL. The defendant had no control over budget determinations or the broad allocation thereof to programs underway or contemplated at ORNL, but under its contract with the AEC, defendant was required to operate within the assigned budget. As a result of the lower budget levels, ORNL eliminated about 900 jobs during the period beginning July 1968 through June 1971. This reduction was accomplished to a large degree by the nonreplacement of employees leaving (resignation, retirements, death, and other voluntary terminations); by the transfers of available staff to new openings at the Gaseous Diffusion Plant and the Y–12 Plant at Oak Ridge; and, finally, as a last resort, by involuntary termination of staff.

The parties further concede that defendant, to preserve work opportunities at ORNL for as many employees as possible, undertook reductions of its overhead costs with respect to such items as travel, the use of consultants, the use of subcontracts for research and development, the use of subcontracts and purchase orders for outside fabrication and maintenance, the extent of building occupancy, material and equipment use, telephone expense, heat, light and water use, and by combination of divisional overhead functions. The defendant also reduced the Nuclear Division staff supporting ORNL, including, but not limited to, the law, purchasing, accounting and finance, and the Computer Technology Center departments.

It is further specifically stipulated that at the time of plaintiff's termination he was given a separation allowance

equal to approximately five and one-half months pay and that plaintiff's rights in both the contributory and non-contributory pension plan was vested without forfeiture which will entitle plaintiff to those benefits upon reaching retirement age or upon election to receive such at an earlier time with discount reductions being approximately made.

▇ The purpose of the Act under which this action was instituted is to promote employment of older persons based on their ability rather than their age; to prohibit discrimination on account of age; and, finally, to aid workers in meeting the impacts that come with age.[1] Section 623(a) of the Act provides in pertinent part:

"(a) It shall be unlawful for an employer—

"(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

"(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

"(3) to reduce the wage rate of any employee in order to comply with this Act. . ."

However, Title 29 U.S.C. § 623(f) provides a defense for an employer charged with a violation of the Act and states in pertinent part:

"(f) It shall not be unlawful for an employer, employment agency, or labor organization—

"(1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age; . . ."

The Court has heard proof in the case throughout a full day of trial and this proof shows that the AEC advised defendant that because of Congress' action in curtailing or restricting funds for use at Oak Ridge, a reduction in force in the various divisions of the operation was necessary. In that connection, it is an economic tragedy that anyone who wishes to work in this country is forced to lose his job. It is doubly distressing and disconcerting for a man who is a scientist, or who has devoted a great deal of his productive life to chemistry, and who has reached 50 years of age, has to face termination. The management of defendant was just as sympathetic as the Court, but budget reductions required that some employees had to be terminated.

This proof further shows that management, in a careful and intelligent

---

1. "(a) The Congress hereby finds and declares that—

"(1) in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs;

"(2) the setting of arbitrary age limits regardless of potential for job performance has become a common practice, and certain otherwise desirable practices may work to the disadvantage of older persons;

"(3) the incidence of unemployment, especially long-term unemployment with resultant deterioration of skill, morale, and employer acceptability is, relative to the young-

er ages, high among older workers; their numbers are great and growing; and their employment problems grave;

"(4) the existence in industries affecting commerce, of arbitrary discrimination in employment because of age, burdens commerce and the free flow of goods in commerce.

"(b) It is therefore the purpose of this Act [§§ 621–634 and notes of this title] to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment."

manner, undertook to establish a system to evaluate the qualifications of each employee in the various divisions, including plaintiff. Pursuant to conferences held by the management, guidelines were established and forwarded to all divisional directors by the then Deputy Director of the Laboratory, Floyd L. Culler. In reference to all monthly salaried employees to which group plaintiff belonged, the standards of evaluation were as follows:

"*Monthly Salaried Personnel*—Ability and effectiveness should be evaluated first, and these must be the controlling considerations. We suggest that the following factors be considered for each employee:

"a. Ability

"b. Effectiveness

"c. Value to continuing laboratory programs

"d. Versatility

"e. Uniqueness—Does the employee possess a specialty that is important to the division or to ORNL?

"f. Personal problems

"g. Company service shall be considered as follows:

"(1) Personnel with less than three years' service should be considered first for RIF unless the quality factors are exceptional

"(2) Personnel of less than 40 years of age with relatively short service should be considered next with the quality factors being important

"(3) Personnel with long Company service and over 40 years of age should be given *most* consideration for retention." (Emphasis added)

The evidence clearly indicates that the Company officials conscientiously, and without any intention to do anyone an injustice, used these factors in evaluating the services of its employees in order to determine who must be terminated. Review boards at various levels were established to scrutinize those who had been selected for possible termination by the divisional directors. In plaintiff's division, there was a three-man board of which Mr. Grimes, the Director of the Reactor Chemistry Division and who testified at trial, was a member. He testified that he had a working knowledge of the ability and productivity of all the members of his staff including plaintiff, but, upon consideration of the factors as supplied in the directive heretofore quoted, determined that plaintiff should be included on the list of those to be prospectively terminated. When asked if plaintiff's age was considered, Mr. Grimes stated that he considered plaintiff's age and long service record with the Company in an attempt to retain plaintiff as an employee. He emphatically denied that the age factor was used adversely for any of the employees considered for termination. To the contrary, Mr. Grimes, as well as the other administrative personnel involved in evaluating employees for termination, testified that age and length of service was a consideration used only for the benefit of an employee and in no way could such be used to adversely affect those considered for termination.

Plaintiff contends, however, that the management at ORNL was conscious of an increasing age profile of its personnel and that because of such, an effort was made to terminate those older employees without relocation and to retain and relocate those who were younger. The evidence fails to support that contention. The proof shows that several employees younger than plaintiff were transferred either into plaintiff's division or into other plants. However, several witnesses testified that those who were retained and transferred had special qualifications which particularly suited them for the jobs that were required to be performed. Additionally, defendant established a relocation and placement service to be utilized by those who were terminated, and that in plaintiff's case an attempt was made to retain him in another capacity. However,

plaintiff decided that he would be more wisely allocating his time and efforts in other endeavors.

All of the defendant's witnesses agreed that the age profile at ORNL was higher than at similar facilities throughout the nation. The primary reason for this is that ORNL was established in the late stages of World War II for the purpose of working on what was then called the Manhattan Project. At that time, most, if not all, of the personnel were young. However, as time passed, the age profile, of course, increased. It is clear that at the time a general reduction in force was called for, a large number of those terminated would be from 40 to 60 years of age. The evidence shows, however, that while management was aware of this profile, every attempt was made to employ an evaluation system in which the consideration of age benefited rather than adversely affected the employee. The Court is of the opinion that plaintiff's contention in this regard is not well founded.

Plaintiff further claims that the evaluation system employed was inadequate because Mr. Grimes, the Divisional Director, failed to consult with Dr. Weaver, plaintiff's immediate superior, in determining plaintiff's professional ability and productivity and because plaintiff was not given the opportunity to consult with those in decision-making positions and to comment upon his evaluation. Plaintiff relies upon Stringfellow v. Monsanto Company, 320 F.Supp. 1175 (W.D.Ark.1970), in support of this contention.

While these procedures were employed by the defendant in the *Stringfellow* case, it is the opinion of the Court that such are not the sine quo non in order for defendant here to show that reasonable factors other than age were used in reaching its ultimate decision to terminate plaintiff. Each case must rest on the facts and circumstances presented at trial.

We are of the opinion, and the Court must find, that the evidence in this case fails to show that defendant adversely used age in evaluating plaintiff's services, but to the contrary, considered the age factor in an attempt to save plaintiff, as well as all the other employees in plaintiff's category. Hodgson v. First Federal Savings and Loan Association, 455 F.2d 818 (5th Cir. 1972); Stringfellow v. Monsanto Company, 320 F.Supp. 1175 (W.D.Ark. 1970); Monroe v. Penn-Dixie Cement Corporation, 335 F.Supp. 231 (N.D.Ga., 1971); Schulz v. Hickok Manufacturing Co., Inc., 358 F.Supp. 1208 (N.D.Ga. 1973).

It is accordingly ordered that plaintiff's action be, and same hereby is, dismissed.