John P. McGUIGAN, Plaintiff,

v.

CAE LINK CORPORATION, Defendant.

No. 91–CV–250.

United States District Court,
N.D. New York.

April 29, 1994.

See also FS 94–2769.

Twining, Nemia & Steflik, Binghamton, NY, for plaintiff (Joseph J. Steflik, Jr., of counsel).

Hinman, Howard & Kattell, Binghamton, NY, for defendant (Paul T. Sheppard, of counsel).

## MEMORANDUM, DECISION AND ORDER

McAVOY, Chief Judge.

This suit arose from the termination of John P. McGuigan, an employee of the Marketing Department at CAE–Link Corporation ("CAE–Link"). On May 18, 1989, McGuigan was terminated from CAE–Link during a planned reduction in the company's work force. Contending that he was unlawfully discharged from his position because of his age, plaintiff brought claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and New York Human Rights Law (New York Executive Law, Article 15), and brought a claim for alleged breach of employment contract. The ADEA and Human Rights Law claims survived for trial.

A jury trial of this action commenced on February 22, 1994 and ended on March 7, 1994 with a jury verdict in favor of the defendant CAE–Link. On March 9, 1994, judgment dismissing plaintiff's action was entered by the Court Clerk. On March 16, 1994, plaintiff served and filed a motion for judgment pursuant to Fed.R.Civ.P. 50, or alternatively, for a new trial pursuant to Fed.R.Civ.P. 59. Additionally, plaintiff seeks an extension of time to file an appeal pursuant to Fed.R.App.P. 4(a)(5) to sixty (60) days from the date this order is entered.

## A. Procedural Requirements of Motion for Judgment as a Matter of Law

Defendant asserts that plaintiff may be procedurally barred from moving for judgment as a matter of law under Fed.R.Civ.P. 50(b) because he did not make a motion for judgment pursuant to Fed.R.Civ.P. 50(a) at the close of CAE–Link's proof. Defendant's attorney asserts that at the end of plaintiff's proof he made the only motion for judgment. He claims that no motions for judgment were made at the close of all evidence by either party. On the other hand, plaintiff's attorney attests that he made a Rule 50(a) motion at the close of defendant's proof and renewed the motion at the close of all evidence.

■ Generally, a motion for judgment as a matter of law may be made after judgment, but only if a motion for a directed verdict was made prior to the submission of the case to the jury. Fed.R.Civ.P. 50(b); *Piesco v. Koch,* 12 F.3d 332, 340 (2d Cir. 1993). The purpose of requiring that the motion for a directed verdict be made before the case is turned over to the jury is to allow the non-moving party to have the chance to cure any deficiency in its proof that may have been overlooked. *Piesco,* 12 F.3d at 340. Essentially, the motion for judgment as a matter of law is a renewal of the directed verdict motion. *Heller v. Champion Int'l Corp.,* 891 F.2d 432, 436 (2d Cir.1989). However, despite this general requirement and the rationale supporting it, the court may consider a Rule 50(b) motion in cases where no directed verdict motion was made if it is necessary to prevent "manifest injustice." *Gibeau v. Nellis,* 18 F.3d 107 (2d Cir.1994).

■ In this case, due to ambiguity in the trial transcript and the affidavits of the attorneys, it is unclear whether plaintiff actually made a motion for directed verdict. It appears from the transcript that the court told the parties at the close of all evidence that it would reserve on the "[directed verdict] *motions* which had been made," yet it is not clear from other portions of the transcript that both parties made such motions. Nonetheless, due to these ambiguities, and in order to avoid injustice, the court will continue under the assumption that Rule 50(a) motions were made by both parties, and will consider the merits of plaintiff's Rule 50(b) motion.

## B. Motion for Judgment as a Matter of Law

A judgment as a matter of law is only appropriate when there is "such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result o[f] sheer surmise and conjecture." *King v. Macri,* 800 F.Supp. 1157, 1160 (S.D.N.Y.1992), *quoting, Sorlucco v. New York City Police Dept.,* 971 F.2d 864, 871 (2d

Cir.1992). Stated another way, a judgment as a matter of law is proper only if there is "such an overwhelming amount of evidence in favor of the movant that reasonable and fairminded [jurors] could not arrive at a verdict against him." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 14 (2d Cir.1993). A motion for judgment as a matter of law "should be denied unless, viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.'" *Samuels,* 992 F.2d at 14, *quoting, Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970).

In this case, plaintiff claims that judgment as a matter of law is appropriate because evidence submitted by the defendant supports a clear violation of the ADEA. Plaintiff asserts that:

> CAE–Link Corporation admitted, and the exhibits support, that it utilized statistics to insure that the percentage of employees over 40 years of age, females, and minorities remained the same after layoffs as it was prior to such layoffs. The rationale—to avoid allegations of disparate impact.

> The documents also establish that during the layoff procedure, recent college graduates and new hires were eliminated from layoff consideration. Ms. Laura Miller admitted during her testimony that these individuals were generally the younger employees.

Pl. Memorandum of Law at 1.

#### 1. *Use of Statistics to Maintain a Balanced Work Force*

■ Plaintiff essentially argues that CAE–Link used this procedure in connection with its May/June 1989 layoff and that it utilized such statistical information to protect employees over 40 years of age in order to avoid allegations of disparate impact. Plaintiff claims that the practice of using a program to maintain a balanced work force is prohibited by the ADEA, and thus judgment as a matter of law should be granted in his favor.

A similar situation was presented in *Gill v. Union Carbide Corp.,* 368 F.Supp. 364 (E.D.Tenn.1973) where a terminated employee in the protected age group brought suit under the ADEA because age was considered in the layoff decision. The defendant admitted that age and length of service were considered in the termination decision but that they were only used in an attempt to retain the plaintiff. The court found that the evidence in the case failed to show that defendant used the employee's age consideration adversely and thus did not violate the ADEA. *Gill,* 368 F.Supp. at 369.

In this case, although defendant presented evidence which showed that CAE–Link had in the past reviewed and evaluated layoff decisions after they were made to ensure that the company did not discriminate against older employees, no evidence was presented which showed that age was used to identify and choose employees for termination during the May/June 1989 layoff or at any time, or that such age consideration was applied to plaintiff's case in particular. Even if this age consideration was taken into account in Mr. McGuigan's case, the evidence does not show that defendant used the age consideration to discriminate against him. This is in sharp contrast to the cases relied upon by the plaintiff in which non-minority employees who were terminated because of favorable consideration given to minorities brought successful suits claiming discrimination. *See, e.g., Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267, 282–83, 106 S.Ct. 1842, 1843, 90 L.Ed.2d 260 (1986) (stating that the claim was brought by displaced non-minority teachers who had been laid off under a plan which retained minority teachers with less seniority); *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 579, 104 S.Ct. 2576, 2585, 81 L.Ed.2d 483 (1984) (noting that the issue before the Court was whether the district court overstepped its bounds in requiring that white employees be laid off when the established seniority system would have required that black employees with less seniority be laid off). In those cases, the parties seeking judicial review of the layoffs were non-minority persons not protected by the layoff procedure being implemented. Their alleged injuries arose from the fact

that the consideration of protected status used in those cases caused them to be terminated from their jobs. The case at hand presents the antithesis of the situations in the *Wygant* and *Firefighters* cases because here the plaintiff is a member of the class protected by the methods allegedly used in the May/June 1989 layoff.

Viewing the evidence in the light most favorable to the party moved against, as the court must do in a motion for judgment as a matter of law, the evidence fails to show that defendant adversely used age in evaluating plaintiff's termination. *See Gill,* 368 F.Supp. at 369; *see also Williams v. General Motors Corp.,* 656 F.2d 120, 130 (5th Cir. Unit B Sept. 1981) (stating that a violation of the ADEA requires that a plaintiff produce evidence that leads to a reasonable conclusion that "defendant consciously refused to consider retaining or relocating a plaintiff because of his age" or that "defendant regarded age as a negative factor in such consideration"). Thus, plaintiff's motion for judgment as a matter of law on the grounds that CAE–Link used statistics to maintain a balanced work force must be denied.

In doing so, the court disagrees with plaintiff's interpretation of *Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982). Citing various passages from the decision, plaintiff maintains that *Teal* holds that age may not be utilized as a factor at any stage of an employment decision-making process. Neither this court, nor other courts dealing with ADEA cases since the *Teal* decision, has reached this conclusion as can be seen from the various cases mentioned in this order.

### 2. *Treatment of Recent College Graduates and New Hires*

■ Plaintiff also argues that CAE–Link implemented a policy of exempting new hires and recent college graduates from consideration for termination, that this fact was established at trial, and therefore, the policy constitutes a per se violation of the ADEA. However, even if the evidence at trial did support a finding that recent college graduates and new hires were exempt from termination, it does not present a per se violation

of the ADEA. "The bare fact that an employer encourages employment of recent college and technical school graduates does not constitute unlawful age discrimination. Only when those recruits are insulated from reduction at the expense of employees within the protected age group is the ADEA implicated." *Williams,* 656 F.2d at 130 n. 17.

In this case, no evidence was submitted which supports a finding that the alleged policy adversely affected plaintiff's particular employment or that it had a disproportionately negative effect on members of the protected age group. Such a showing is necessary to prove a violation of the ADEA. *Geller v. Markham,* 635 F.2d 1027, 1034 (2d Cir.1980) (denoting that it is necessary to show that the discriminatory practice was applied in plaintiff's particular case in order to prove a violation of the ADEA); *Massarsky v. General Motors Corp.,* 706 F.2d 111, 121 (3d Cir.1983) (recognizing that favoring the retention of students enrolled in the General Motors Institute in company positions during layoffs, even if these students were generally younger than the plaintiff, did not support a per se violation of the ADEA unless plaintiff could prove that a disproportionate number of employees from the protected age group were represented among the laid off employees). Because plaintiff did not present evidence at trial showing that those in the protected age group were disproportionately affected by this layoff, no violation of the ADEA can be supported relating to any policy regarding the retention of new hires and recent graduates. Thus, a per se violation of the ADEA has not been established and plaintiff's motion for judgment as a matter of law is denied on these grounds as well.

### C. Motion for New Trial

The standard for granting a new trial is lesser than the standard for judgment as a matter of law for the court may grant a new trial any time it becomes convinced that the jury has "reached a seriously erroneous result or that the verdict is a miscarriage of justice." *King,* 800 F.Supp. at 1160, *quoting, Sorlucco,* 971 F.2d at 875.

Plaintiff has not included an analysis of this standard in regard to the jury's verdict in his memorandum of law. Thus, the court is unable to discern the plaintiff's basis for this motion and it is also unable to find *sua sponte* that the jury's verdict was seriously erroneous or a miscarriage of justice. Under the framework for age discrimination cases using the *McDonnell Douglas* scheme, as this case did, the plaintiff must first make a prima facie showing of age discrimination. The burden of production then switches to the defendant to introduce evidence of a legitimate, non-discriminatory explanation for its actions. The plaintiff must then prove that the reason offered by the defendant is not the true reason for the employment decision and that age is the true reason. *See St. Mary's Honor Ctr. v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

In this case, the jury found that plaintiff proved his prima facie case of age discrimination and that defendant satisfied its burden of production of a legitimate, non-discriminatory reason for plaintiff's termination. The jury, however, did not find that plaintiff's termination was actually due to his age and that defendant's proffered reason for the termination was false.[1] This outcome, in light of all the evidence submitted during trial appears to be a reasonable decision. Therefore, plaintiff's motion for a new trial is denied.

**D. Extension of Time to Appeal**

Furthermore, pursuant to plaintiff's request, the court grants the plaintiff sixty (60) days from the date of entry of this order in which to file an appeal. Fed.R.App.P. 4(a)(5); *Wesley v. Israel,* 525 F.Supp. 646, 646–47 (E.D.Wis.1981).

**IT IS SO ORDERED.**

---

1. It cannot be specifically ascertained from the verdict sheet whether the jurors found that plaintiff's termination was not due to his age or whether they found that the defendant's proffered reason for termination was valid, or both.