**Harold W. BUCHHOLZ, Plaintiff,**

v.

**SYMONS MANUFACTURING COMPANY, a division of Symons Corporation, Defendant.**

**No. 75–C–340.**

United States District Court,
E. D. Wisconsin.

Jan. 13, 1978.

Michael, Best & Friedrich by Lee J. Geronime, Milwaukee, Wis., for plaintiff.

Pope, Ballard, Shepard & Fowle by Paul E. Freehling & Terry Satinover, Chicago, Ill., for defendant; Godfrey & Trump by William H. Frazier, Milwaukee, Wis., of counsel.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This is an action under the Age Discrimination in Employment Act, as amended, 29 U.S.C. §§ 621 et seq. Jurisdiction is based on 29 U.S.C. § 622(b) and 28 U.S.C. § 1331. The plaintiff claims to have been dis-

charged from his employment with the defendant because of his age; the defendant claims that age was not a factor in the plaintiff's discharge, contending instead that he was terminated because of inadequate job performance. The plaintiff seeks back pay, lost benefits, damages for pain and suffering, liquidated damages pursuant to 29 U.S.C. § 216, costs, and reasonable attorney's fees.

The case was tried to the court, and the parties have filed briefs on the merits. They have also submitted proposed findings of fact and conclusions of law. The testimony adduced at trial disclosed several key factual disputes. In this decision, which shall constitute my findings of fact and conclusions of law, pursuant to Rule 52(a), Federal Rules of Civil Procedure, these factual disputes have been resolved as indicated after a consideration of the conflicting testimony and the exhibits received into evidence.

## LIABILITY

The plaintiff, Harold Buchholz, was employed by the Symons Manufacturing Company on March 1, 1959, in Chicago, where he and his wife then resided. Symons, an employer of more than 20 persons, manufactures, distributes, sells and rents concrete construction forms and accessories, and sells chemicals for concrete treatment and curing for use by contractors in pouring concrete buildings. Its headquarters are in Des Plaines, Illinois.

Mr. Buchholz served as an account manager responsible for sale and rental of Symons products in the Chicago area. As account manager, he was also required to act as liaison between the company and its customers, make collections, and to assist contractors with the application of Symons' products to the particular jobs.

From 1959 through 1969, Mr. Buchholz met or exceeded the sales quota assigned to him for each year. His sales volume and sales ranking among all Symons account managers for the years 1962 to 1969 was as follows:

| YEAR | AMOUNT | NO. OF ACCT. MANAGERS | RANK |
|------|--------|------|------|
| 1962 | $173,624.00 | 30 | 5 |
| 1963 | 218,797.00 | 37 | 5 |
| 1964 | 167,116.00 | 39 | 15 |
| 1965 | 334,741.00 | 47 | 3 |
| 1966 | 296,902.00 | 47 | 2 |
| 1967 | 305,068.00 | 44 | 2 |
| 1968 | 336,551.00 | 51 | 3 |
| 1969 | 368,180.00 | 45 | 6 |

Like account managers, Mr. Buchholz received a salary plus a commission on each sale to an account assigned to him whether or not his efforts contributed to making the sale.

On March 1, 1970, at the plaintiff's request, he was transferred from Symons' headquarters to Waukesha, Wisconsin, to become an account manager with the Wisconsin branch office. His immediate superior there, occupying the position of district sales manager, was Michael Nolan. Mr. Nolan's supervisor was Warren Senneke, the district manager. Mr. Senneke's supervisor was James Norris, the regional manager. Mr. Senneke and Mr. Norris worked at the Des Plaines headquarters.

Mr. Buchholz' sales record in Wisconsin for the years 1970–1972 was as follows:

| YEAR | AMOUNT | NO. ACCT. MANAGERS | RANK |
|------|--------|------|------|
| 1970 | $306,319 | 52 | 6 |
| 1971 | 359,412 | 65 | 7 |
| 1972 | 392,954 | 68 | 14 |

During these years, as in many previous years in Chicago, he received letters of commendation from John Imonetti, Symons' divisional marketing manager, and he was awarded bonuses for exceeding his sales quotas and for establishing new accounts.

At a meeting attended by Messrs. Nolan, Senneke, Norris and Buchholz on November 30, 1972, the plaintiff's performance as an account manager was criticized, and he was advised that four of his major accounts were being transferred to Mr. Nolan effective January 1, 1973. When Mr. Buchholz objected to the transfer of accounts, Mr. Norris stated: "Hell, you've only got four more years to go." As a result of subse-

quent written protests to Mr. Nolan and other Symons executives, one of the transferred accounts was returned to Mr. Buchholz.

After the November 30, 1972, meeting, the plaintiff's working relationship with Messrs. Nolan, Senneke and Norris was strained. His letters to them and other Symons management personnel were ignored, and he was left out of sales discussions and meetings. On several occasions prior to and after the November 30, 1972 meeting, Mr. Buchholz was compared to, and reminded of other retiring employees during conversations with Mr. Norris. Initially, Mr. Buchholz accepted references to his age and possible retirement as "good natured ribbing," but after the November meeting, the remarks became more pointed. In July, 1973, Mr. Buchholz requested and received information concerning early retirement benefits. However, when he discussed early retirement with Messrs. Norris, Senneke and Nolan at a meeting on September 4, 1973, he advised them that he had no intention of retiring.

On September 14, 1973, Mr. Nolan wrote a memorandum to Mr. Norris and Mr. Senneke recommending that Mr. Buchholz be retired at age 62, in February, 1974. The reason cited by Mr. Nolan for this recommendation was that Mr. Buchholz' customers were complaining "on an almost daily basis" of Mr. Buchholz' "lack of performance." Mr. Nolan also recommended that the plaintiff's territory be divided between himself and Craig Vanderbunt, a 22 year old Symons engineer assigned to the Waukesha office, because they were already servicing many of Mr. Buchholz' accounts.

On October 17, 1973, Mr. Buchholz met with Messrs. Nolan, Senneke and Norris in a tension-filled meeting at which he was told that fourteen of his accounts were being transferred to Mr. Vanderbunt because he "wasn't doing the job." He was told that he could continue as an account manager in Wisconsin without the transferred accounts (which constituted the bulk of his sales volume), that he could transfer to another territory if one were available, or that he could take early retirement.

On November 2, 1973, Mr. Buchholz met with Mr. Norris and James Carlson, Symons' personnel director, to discuss early retirement benefits. On January 10, 1974, Mr. Carlson's department forwarded retirement forms to be filled out by Mr. Buchholz. On January 16, 1974, Mr. Buchholz wrote to Mr. Carlson stating that the forms had been sent in error and that he had no intention of taking early retirement.

In late January, 1974, Mr. Buchholz was advised by telegram that all of his accounts were being transferred to Mr. Vanderbunt as of February 1, 1974, and that he should report to Mr. Norris' office in Des Plaines on January 31, 1974.

On January 31, 1974, Mr. Buchholz met with Mr. Norris and Mr. Carlson and reiterated his position that he had no intention of retiring early. He was then told that there was no suitable territory open for him and that because he was rejecting early retirement, he was terminated effective March 1, 1974. Mr. Buchholz responded by stating that his forced early retirement was "nothing but age discrimination." Mr. Norris' reply, according to the plaintiff, was "you're damned right it is."

On February 4, 1974, Mr. Carlson wrote a letter to Mr. Buchholz enclosing retirement forms and summarizing the reasons for his termination discussed at the January 31 meeting: "adverse customer reaction, ineffective job servicing, and a lack of technical understanding." Mr. Carlson also wrote that there were no "openings that do not require a greater technical insight than your current performance would indicate you possess."

The plaintiff introduced the testimony of two other former Symons employees concerning remarks made by Mr. Norris. Calvin Rudolph, an account manager who worked for Symons from 1950 until February 1, 1973, testified concerning the circumstances of his own early departure from the company. Mr. Rudolph testified that Mr. Senneke advised him that he was being retired early because "younger·men were

needed in the territory." The deposition of Robert Wilson, a former marketing manager and assistant to the president of Symons from 1962 to 1975, was admitted into evidence pursuant to Rule 32(a)(3)(C), Federal Rules of Civil Procedure. At the deposition, he testified that he overheard a conversation between Mr. Norris and Mr. Senneke in which Mr. Senneke said to Mr. Norris that they had disposed of Mr. Rudolph and now were going to get rid of Mr. Buchholz.

Mr. Norris testified at trial and denied making any of the remarks related above. The parties' evidence on these factual questions is in direct conflict. I have resolved the conflict in favor of the plaintiff, finding his testimony more credible.

The plaintiff has submitted certain statistical evidence to show a violation of the statute. I believe that the plaintiff has made out a substantial case of employment discrimination because of age with his other evidence, and thus the statistical evidence need not be considered.

It is not disputed that the plaintiff is an employee within the meaning of the act and that the defendant, an employer of more than 20 persons, is subject to the act. 29 U.S.C. § 630. To establish a violation of the act, the plaintiff must show by a preponderance of the evidence that age was a factor in the decision to discharge him and that it in fact made a difference. *Laugesen v. Anaconda Company*, 510 F.2d 307 (6th Cir. 1975).

The plaintiff has, in my opinion, made a strong showing that the defendant's employees considered age in arriving at their decision to discharge the plaintiff and that age was the determining factor in that decision. I find that the statements attributed to Mr. Norris at the meetings on November 30, 1972, and January 31, 1974, were in fact made and that they are blunt admissions that the plaintiff was being discharged because of his age. The statement by Mr. Senneke during his conversation with Mr. Rudolph concerning the latter's early retirement, when considered in conjunction with the Norris-Senneke conversation overheard by Mr. Wilson, is convincing evidence that a plan to dispose of the older account managers had been devised.

At trial, the defendant attempted to establish that the plaintiff's forced early retirement was based on reasonable factors other than age or was for cause. 29 U.S.C. § 623(f)(2) and (3). Evidence was introduced to show that the reason for Mr. Buchholz' termination was that customers were complaining of his failure to perform enough on-site servicing of his accounts and his lack of technical knowledge regarding the more complex projects for which Symons products were used. The defendant also attempted to show that the transfer of accounts from Mr. Buchholz was to increase sales.

Apart from Mr. Nolan's testimony regarding customer complaints, there is no written evidence of any customer complaint of Mr. Buchholz' performance as an account manager. The defendant did introduce two documents written by Symons personnel in which customer complaints are cited as reasons for taking action against Mr. Buchholz. The first is the September 14, 1973, memorandum from Mr. Nolan to Mr. Norris and Mr. Senneke. It is significant that in the same memorandum Mr. Nolan proposed a plan whereby Mr. Buchholz' territory would be divided between Mr. Vanderbunt and Mr. Nolan. Thus, Mr. Nolan stood to gain by painting a bad picture of Mr. Buchholz' performance. The second document was that prepared by Mr. Carlson on February 4, 1974, summarizing the reasons expressed at the January 31, 1974, meeting for discharging the plaintiff. This belated justification for the termination has minimal persuasiveness since it does not contemporaneously reflect the reasons which led to the plaintiff's termination. *Schulz v. Hickok Mfg. Co.*, 358 F.Supp. 1208, 1216 (N.D.Ga. 1973).

The claim of frequent customer complaints is clearly not reflected in the volume of Mr. Buchholz' sales to those customers. At the time of the November 30, 1972, meeting, the first occasion at which Mr. Buchholz was criticized by his superiors, Mr.

Buchholz was exceeding his sales quota. He ultimately exceeded his quota for that year by $37,000. In fact, a few months later, on January 30, 1973, he received a letter from Mr. Imonetti praising him for working hard and doing "an excellent job" in 1972. It is also significant that Mr. Buchholz' younger replacement, Mr. Vanderbunt, had a poorer sales record than Mr. Buchholz' subsequent to the discharge, yet he remains an employee of Symons.

Under all the circumstances, I am not convinced that customer complaints motivated the defendant's termination of the plaintiff. Moreover, the plaintiff's claimed lack of technical knowledge was unmentioned in the letters from Mr. Nolan to Mr. Senneke and to Mr. Norris and was not substantiated by any objective pre-discharge evidence. Although inadequate performance and a lack of technical knowledge were cited to Mr. Buchholz as the reasons for his discharge, I am not persuaded that the reasons were actually relied upon, or that the defendant made a good faith, honest evaluation of the plaintiff's job performance. The preponderance of the evidence shows that age was the most important and determining factor in the defendant's decision to force the plaintiff into early retirement. I therefore find that the defendant violated the Age Discrimination in Employment Act by terminating the plaintiff because of age.

## RELIEF

### Back Pay and Benefits

The parties agree that the measure of back pay under the Age Discrimination in Employment Act is the amount the plaintiff would have earned but for the violation less the sum of unemployment benefits received plus income from other employment or amounts earnable with reasonable diligence. *Coates v. National Cash Register Company*, 433 F.Supp. 655 (W.D. Va.1977); *Schulz v. Hickok Mfg. Co.*, 358 F.Supp. 1208 (N.D.Ga.1973).

The plaintiff claims that the amount of income he would have earned between March 1, 1974, and February 28, 1977, had he remained with Symons is $77,115.63. This figure represents the plaintiff's average income for the years 1968–1972, including both his base salary and commissions. The year 1973 was not included in the computation because it was during that year that the defendant began to transfer accounts from the plaintiff pursuant to the unlawful plan for his termination. From this sum the plaintiff would subtract the $6,626 received as unemployment compensation from the state of Wisconsin.

The defendant argues that the maximum the plaintiff may recover as back pay is $39,000, representing the sum of three years base salary, since an award including commission income would require the court to engage in conjecture. It is argued further that the plaintiff failed to make the required efforts to mitigate damages by diligently seeking employment elsewhere, and thus he is entitled to no award of back pay.

Addressing the latter argument first, I believe that Mr. Buchholz exercised reasonable diligence to secure alternate employment after his discharge. He sought employment through the Wisconsin Job Service and was interviewed for a sales position with several prospective employers. The positions he was offered would have provided only commission income or would have required relocation. At Symons, the plaintiff enjoyed a base salary of $13,000 and substantial commissions. A job which affords only commission income would not, in my judgment, be comparable with his position at Symons since it offers no certainty of reward. *Coates*, supra, at 662. Moreover, relocation for the three years of employment until Mr. Buchholz' planned retirement is not required as a reasonable effort to mitigate damages.

The defendant's argument that lost commission income cannot be included in an award of back pay is without merit. The plaintiff's annual income from commissions remained fairly constant from 1968 to 1972 and thus can be predicted with reasonable certainty. Therefore, the plaintiff will be awarded the difference between his back

pay and unemployment compensation received, a sum of $70,489.63.

The plaintiff is also entitled to recover pension benefits computed as if he had been permitted to work until March 1, 1977, a sum of $432.54 monthly. Thus for the months of March through December, 1977, the plaintiff is entitled to pension benefits for a total of $3,892.86. The defendant will be enjoined to provide a like benefit to the plaintiff in the future or such amount as he would become entitled to under the Symons pension plan based on his length of service computed through March 1, 1977. The plaintiff claims reimbursement for health insurance expenses, but this claim is foreclosed by his concession at trial that he went uninsured after his discharge due to the high premiums quoted to him.

The plaintiff also claims a sum equal to three annual vacation periods to which he was entitled as an employee of 15 years. It is not clear, however, whether this amount is already included in the average yearly income used to compute the back pay award. The parties are directed to address this issue in the report to the court ordered below.

### Liquidated Damages

 Under 29 U.S.C. § 626(b), where it is shown that an employer's violation of the act was willful, the plaintiff may recover "liquidated damages" in addition to back pay and benefits. In the statutory sense, such damages are in addition to back pay, not in lieu of it.

The purpose of an award of "liquidated damages" is to provide compensation for the more obscure items of damage resulting from the retention of the employee's pay by his employer. *Rogers v. Exxon Research and Engineering Co.*, 404 F.Supp. 324, 335 (D.N.J.1975), reversed on other grounds 550 F.2d 834 (3rd Cir. 1977). The measure of "liquidated damages" is the sum of "amounts owing" to the plaintiff as a result of the defendant's violation of the act. "Amounts owing" include unpaid wages and benefits but do not include damages for pain and suffering. *Rogers*, supra. Thus,

the provision for "liquidated damages" effectively doubles the award of back pay and benefits.

For a violation to be willful, the plaintiff must show conduct that is intentional, knowing and voluntary, as distinguished from conduct that is accidental or unknowing. *Combes v. Griffin Television, Inc.*, 421 F.Supp. 841 (W.D.Okl.1976); *Hodgson v. Hyatt*, 318 F.Supp. 390 (N.D.Fla.1970).

The statements made by Mr. Buchholz' superiors discussed previously in this decision established beyond a doubt that the unlawful discharge of the plaintiff was intentional, knowing and voluntary. Furthermore, there are no considerations of good faith as described in *Combes* to warrant less than a full award of "liquidated damages." Accordingly, an amount equal to the back pay award plus pension benefits withheld will be awarded to the plaintiff as "liquidated damages," as defined in 29 U.S.C. § 626(b).

### Damages for Pain and Suffering

 Prior to trial the defendant moved to exclude evidence of pain and suffering relying on *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3rd Cir. 1977). I denied the motion based on my agreement with the lower court opinion in *Rogers*, reported at 404 F.Supp. 324 (D.N.J. 1975), and the decision in *Bertrand v. Orkin Exterminating Co.*, 432 F.Supp. 952 (N.D. Ill.1977). Accord, *Coates*, supra, at 664. My ruling was consonant with an earlier ruling of this court in an unreported opinion. *Wisniewski v. All-Star Insurance Corporation*, 76–C–662, decision and order dated January 14, 1977. I adhere to this position cognizant of the fact that the fifth circuit court of appeals recently joined the third circuit in disallowing pain and suffering damages. See *Dean v. American Security Insurance Co.*, 559 F.2d 1036 (5th Cir. 1977).

At trial, the plaintiff and his wife testified that the discharge adversely affected their marital relationship and created pressures which curtailed their social activities

and vacation plans. The plaintiff also testified that the discharge resulted in emotional strain, causing loss of sleep. The plaintiff seeks $50,000 in damages for pain and suffering. In my judgment, an award of $7,500 for pain and suffering is appropriate.

## CONCLUSION

To summarize, I compute the plaintiff's damages as follows: back pay in the amount of $70,489.63; pension benefits in the amount of $3,892.86; statutory liquidated damages in the amount of $74,382.49; and damages for pain and suffering in the amount of $7,500, for a total damage award of $156,264.98.

In accordance with the parties' stipulation, no award of compensation for reduced social security benefits or for reasonable attorney's fees and costs will be considered at this time. The parties will be ordered to file a status report within 30 days of this order informing the court of their progress in arriving at a stipulation on these remaining matters. Thereafter, a judgment will be entered in this case, encompassing all facets.

Therefore, IT IS ORDERED that the plaintiff recover from the defendant the sum of $156,264.98.

IT IS ALSO ORDERED that the defendant be and hereby is enjoined to provide the plaintiff with future pension benefits as specified in this decision.

IT IS FURTHER ORDERED that the parties file a status report with the court within 30 days of this decision in conformity with the instructions contained herein.

IT IS FURTHER ORDERED that to avoid two judgments in this case, no judgment will be entered at this time, but interest at the rate allowed by state law will be added to the sum of $156,264.98 from the date of this order.