Robert W. MOORHOUSE

v.

The BOEING COMPANY, John Mayer,
Peter Cross, and Ray Pearson.

Civ. A. No. 77–1584.

United States District Court,
E. D. Pennsylvania.

Feb. 19, 1980.

James H. Gorbey, Jr., Gorbey, Di Orio, Gallagher & Palma, Media, Pa., for plaintiff.

Robert M. Landis, Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

### (I) INTRODUCTION

This is an action in which plaintiff Robert W. Moorhouse (Moorhouse), a 55 year old aircraft controls design engineer, alleged that he was illegally demoted, and later laid off, by the defendant Boeing Company (Boeing). The individually named defendants, John Mayer (Mayer), Peter Cross (Cross) and Ray Pearson (Pearson) were alleged to have conspired to take the illegal action on behalf of Boeing.

The Complaint contained four counts. Count One asserted that the actions of Boeing violated the Age Discrimination In Employment Act, 29 U.S.C. §§ 621–634 (ADEA). Count Two charged that defendants Mayer, Cross and Pearson conspired to violate the ADEA. Count Three sounded in common law breach of contract, and asserted that Boeing's action in laying off plaintiff violated a "working lifetime" provision of the oral employment contract between Boeing and Moorhouse. Count Four alleged that defendants Cross and Pearson

conspired to commit the breach of contract set forth in Count Three.

A jury trial commenced on June 11, 1979, and continued through June 12, 13, 18, 19, and 20. At the close of plaintiff's case, defendants moved for a directed verdict pursuant to Rule 50(a), Fed.R.Civ.P. That motion was denied. At the close of all the evidence, defendants renewed their motion for a directed verdict, and after hearing argument, the Court granted the motion as to Counts Two, Three and Four. The motion was denied as to Count One, and the ADEA claim was submitted to the jury with the following special interrogatories:

1. Was age a consideration in Boeing's decision to demote Moorhouse?

    Yes _____      No _____

2. Was the consideration of age a cause of Boeing's decision to demote Moorhouse?

    Yes _____      No _____

3. Was age a consideration in Boeing's decision to lay off Moorhouse?

    Yes _____      No _____

4. Was the consideration of age a cause of Boeing's decision to lay off Moorhouse?

    Yes _____      No _____

On June 20, 1979, the jury returned negative answers to special interrogatories 1 and 3, and judgment was accordingly entered in favor of defendant. Presently before the Court is Plaintiff's Motion For A New Trial Pursuant To Rule 59, Fed.R.Civ.P.

Plaintiff's assignments of error fall into three general categories. First, Moorhouse contends there was error in the Court's refusal to allow certain testimony by five of his witnesses. Second, plaintiff maintains that the Court erred in granting defendants' motion for a directed verdict on the contract claims asserted in Counts Three and Four. Finally, plaintiff suggests that he was prejudiced by the conduct of the trial court towards his counsel. Each contention will be considered separately below.

### (II) DISCUSSION

*(A) The Evidentiary Ruling.*

There are presently pending five additional age discrimination cases by former

employees of Boeing.[1] The actions have all been assigned to this Judge as related cases, and except for the two filed in 1979, all were consolidated for purposes of discovery. At a conference conducted March 5, 1979, a discussion occurred concerning consolidation of the cases for trial as well as for discovery. Neither a formal motion was made nor order entered, but the Court expressed the view that despite the similarity among the cases, there were nevertheless substantial enough factual distinctions surrounding each plaintiff's lay off which made it impractical to try all the cases to the same jury. This is because although Boeing is a defendant in each of the six cases, and there is some overlap among individually named defendants, many of the individually named defendants are *not* named in each case. Moreover, with the exception of plaintiffs Nelson and Santa Maria, who were laid off the same day as Moorhouse, different time periods are involved in each case. The confusion which would result from a joint trial is obvious from only a review of the docket sheets in the cases. Had the actions been consolidated, the trial would have involved six plaintiffs, the Boeing Company and 16 individually named defendants. The Court is convinced a jury would have faced a hopeless task of trying to discern who did and said what to whom and for what reason.

Because one allegation of the Complaint was that Boeing engaged in a "pattern or practice" of discrimination against older employees, however, Moorhouse sought to introduce the testimony of each plaintiff in the other suits at this trial. Additionally, Moorhouse sought to adduce the testimony of some of the plaintiffs concerning the adequacy of Moorhouse's work performance, the difficulty experienced by one of Moorhouse's supervisors[2] in dealing with subordinates, derogatory comments at Boeing about older employees generally and Moorhouse in particular, and Boeing's failure to follow its prior practice of transferring employees from one project to another rather than resorting to lay offs when the work force on a project was cut back. The plaintiff/witnesses were also expected to testify that employees who had been downgraded in job level[3] performed the same work after as before the downgrade, and that "many" older employees were laid off by Boeing. With the exception of testimony concerning comments about age generally, the adequacy of Moorhouse's work performance and Boeing's transfer in lieu of lay off practice, the testimony was drawn from each plaintiff/witnesses' knowledge of the circumstances surrounding his *own* lay off, which ultimately led to the witnesses' suit against Boeing. When this testimony was originally proffered on direct during plaintiff's case in chief, defendants objected on the basis of Rules 401 and 403, Fed.R. Evid.

The rule 401 argument was that, to the extent testimony of each witness was about his own lay off, it was not relevant to Moorhouse's lay off. Under rule 403, defendants maintained that even if evidence of other lay offs similar to Moorhouse's was relevant to the existence of a pattern or practice of discrimination at Boeing, the prejudice resulting from permitting each witness, who is the plaintiff in his own lawsuit, to testify about the circumstances of his departure from Boeing substantially outweighed the probative value of the testimony. At that juncture of the trial, the Court agreed with defendants and the plaintiff/witnesses were excluded, primarily on the same grounds of confusion and unfair prejudice bottoming the Court's decision to not consolidate the cases for trial.

---

1. The other cases are: *Nelson v. The Boeing Company, et al.*, Civil Action No. 77–4111 (E.D.Pa. filed December 1, 1977); *Barker v. The Boeing Company, et al.*, Civil Action No. 78–167 (E.D.Pa. filed January 17, 1978); *Russo v. The Boeing Company, et al.*, Civil Action No. 78–168 (E.D.Pa. filed January 17, 1978); *Santa Maria v. The Boeing Company et al.*, Civil Action No. 79–693 (E.D.Pa. filed February 23, 1979); and, *Greenstein v. The Boeing Company, et al.*, Civil Action No. 79–694 (E.D.Pa. filed February 23, 1979).

2. Defendant Peter Cross.

3. That is, reduced in salary scale.

■ Once a plaintiff has presented a prima facie case under the ADEA, defendants have the burden of producing evidence that some legitimate business purpose, rather than age, was the reason for the allegedly discriminatory action taken. Had the Court permitted each of the proposed witnesses to testify about the circumstances surrounding his own lay off, each, in essence, would have presented a prima facie case of age discrimination. Defendants then would have been placed in the position of either presenting the justification for each witnesses' lay off, or of allowing the testimony to stand unrebutted. This latter alternative, of course, would have had an obvious prejudicial impact on the jury's consideration of Moorhouse's case.[4] To have pursued the former option, defendants would have been forced, in effect, to try all six cases together with the attendant confusion and prejudice inherent in that situation.

Rule 403, Fed.R.Evid. states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In the Court's view, each of the factors set forth in the Rule, danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, and needless presentation of cumulative evidence, would have resulted had each plaintiff in the other cases testified about his lay off.

■ During his case in rebuttal, plaintiff again proffered the testimony of these witnesses, and to a limited extent they were permitted to testify. Specifically the Court stated:

THE COURT: These witnesses will be permitted to testify as respects impeachment of Mr. Sam Thomas concerning his testimony that Boeing does not offer work–lifetime employment contracts.

The next is that testimony concerning, if such there was, comments about Moorhouse's age may be relevant to reasons for Moorhouse's discharged....

One feature that does occur to me is that assuming this case is submitted to the jury, that thes [sic] persons, talking about Russo, Greenstein, Barker, Nelson, Santa Maria, if such were the case, were laid off, might be evidence that Boeing didn't follow the procedure they claim they did.

That, in my view, is a jury argument. N.T. at 655–56.

Moreover, in order to provide the greatest leeway possible, the Court suggested that it would rule on objections to other areas of testimony as they were presented. "Now, I can't rule in a vacuum because I do not know what the precise questions Mr. Gorbey will propound." N.T. at 656.

Thereafter, plaintiff's rebuttal consumed some 56 pages of testimony during which the following topics were covered: The existence of working lifetime employment contracts at Boeing, N.T. at 659–61, 668, 685; comments by supervisors concerning age, N.T. at 672; a purported Boeing policy geared to reducing the age level of the engineering work force, N.T. at 683; and, a brief background of each witnesses' work history at Boeing. *See* N.T. at 657–712. This rebuttal testimony, when combined with the evidence adduced by plaintiff during his case in chief from John Russo, N.T. at 232–27, and Paul C. Gotchel, N.T. at 277–96, covered nearly all aspects of plaintiff's offer of proof as summarized earlier in this Memorandum at 392.

The witnesses did not testify that many older employees at Boeing were laid off or that defendant Cross was responsible for reviewing and approving lay offs in the engineering department. Nor did they testify as to the circumstances surrounding their own lay offs. First, there was no foundation laid in the offer of proof with respect to the witnesses' knowledge that

---

**4.** In the Court's view, even the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that defendant had laid him off because of his age.

"many" older employees had been laid off by Boeing. The term "many" is imprecise at best, and is of probative value only when viewed within the framework of the total number of lay offs which occurred, and then only by comparison with the number of younger employees also laid off. In short, even had the plaintiff/witnesses been questioned as to whether many older employees had been laid off it is doubtful they would have been permitted to answer. *Cf.* N.T. at 295. Second, plaintiff was not prejudiced by his inability to elicit information from the plaintiff witnesses concerning defendant Cross. A directed verdict was granted defendants on the claims involving Cross, and this result had nothing to do with an insufficiency of evidence with respect to Cross' involvement with plaintiff's lay off. *See* Part (II) *infra.* Last, as noted earlier in this Memorandum, testimony about the circumstances connected with lay offs of the plaintiff/witnesses was properly excluded under Rule 403, Fed.R.Evid.

In opposing this last determination, plaintiff relies on *Buchholz v. Symons Manufacturing Company,* 445 F.Supp. 706 (E.D.Wis. 1978), and *Schulz v. Hickok Manufacturing Co., Inc.,* 358 F.Supp. 1208 (N.D.Georgia 1973). In both *Buchholz* and *Schulz,* the district courts considered the circumstances of other employees in determining whether defendants discriminated against plaintiffs on the basis of age. Both cases, however, were tried non–jury. Thus, the considerations set forth in rule 403 did not, as here, militate strongly against admission of the evidence. Moreover, the underpinings of these cases are somewhat questionable. *Buchholz* was based primarily on *Schulz* which, in turn, is grounded on *Danner v. Phillips Petroleum Co.,* 447 F.2d 159 (5th Cir. 1971). *Danner* was a Title VII case in which the district court purportedly [5] relied on the effect an *admitted* company seniority policy (that is, a practice) had on female

workers generally, in deciding the company discriminated against the named plaintiff on the basis of sex. The situation where a practice admittedly exists is quite different from that presented here. In the present case, plaintiff was *not* relying on an admitted practice at Boeing; rather, he was attempting to establish the existence of a discriminatory practice in the first instance. In the Court's view, having the plaintiff/witnesses recount the isolated actions taken against them individually would be of limited probative value to show the existence of a pattern or practice in any event, and given the complex trial circumstances of these six cases, the evidence was properly excluded under Rule 403.[6]

### (B) The Directed Verdict.

At the close of all the evidence, the Court granted defendants' Motion For A Directed Verdict on Counts Two, Three and Four of the Complaint. Based on *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), plaintiff conceded the propriety of a directed verdict on Count Two, which charged the individually named defendants with a conspiracy to violate the ADEA. N.T. at 732–33.[7] Plaintiff maintains, however, that the directed verdict was error as to the breach of contract claim in Count Three and the conspiracy to breach the contract which was alleged in Count Four. As plaintiff admitted, N.T. at 734, if a directed verdict was properly entered on Count Three, then defendants are entitled to judgment on Count Four as well. Accordingly, the Court's analysis will focus upon whether there was sufficient evidence to allow consideration of Count Three by the jury.

Here, as in *Lucacher v. Kerson,* 158 Pa. Super. 437, 45 A.2d 245 (1946), the case turns on what was intended by the term "permanent" as used in connection with

---

5. The District Court Opinion is not published.

6. It must also be recognized that to the extent this evidence was not calculated to demonstrate a pattern or practice of discrimination, it was irrelevant to Moorhouse's individual claim.

7. *See also,* Plaintiff's Motion For A New Trial Pursuant To Rule 59 Of The Federal Rules Of Civil Procedure, Docket Entry 65 at ¶ 3.

plaintiff's employment. Defendant contends permanent was nothing more that an intracompany designation used to distinguish a position with no definite duration (permanent) from one with a foreseeable termination point (temporary). N.T. at 355. Plaintiff, on the other hand, maintains the parties to his employment contract intended permanent to designate his relationship with Boeing as one lasting to retirement age. Stated otherwise, Moorhouse asserts he had a working lifetime contract with the company.

■ The law applicable in this situation is correctly summarized in *Geib v. Allen Wood Steel Co.*, 419 F.Supp. 1205, 1208 (E.D.Pa.1976), where the Court states: [8]

> The general rule in Pennsylvania is that a contract for personal services which does not specify a definite period of time for its duration is presumed to be terminable at will. *Seneca Falls Machine Co. v. McBeth*, 368 F.2d 915 (3d Cir. 1966); *Mayerson v. Washington Manufacturing Co.*, 58 F.R.D. 377 (E.D.Pa.1972); *Utility Appliance Corp. v. Kuhns*, 393 Pa. 414, 143 A.2d 35 (1958); *Rosenfeld v. Rosenfeld*, 390 Pa. 39, 133 A.2d 829 (1957); *Cummings v. Kelling Nut Co.*, 368 Pa. 448, 84 A.2d 323 (1951); *Slonaker v. P. G. Publishing Co.*, 338 Pa. 292, 13 A.2d 48 (1940). The burden is on the party asserting the contrary to overcome the presumption by showing facts or circumstances establishing tenure. (Citations omitted).

Moreover,

> One relying on the contract as providing for a reasonable length of time must establish something in the nature and circumstances of the undertaking which would create the inference that a definite or reasonable period of employment was actually contemplated by the parties. *Cummings, supra*, 84 A.2d at 325.

■ Thus, in deciding defendants' Rule 50(a) motion, the Court was obliged to determine whether, considering all the evidence together with all the reasonable inferences to be drawn therefrom in favor of plaintiff, there was a total failure to prove that a definite period of employment was intended by the parties. *Cf., Lewin v. Metropolitan Life Insurance Co.*, 394 F.2d 608, 613 (3d Cir. 1968). A total failure was manifest in the present case. When plaintiff was asked, on direct examination, whether any time limit was mentioned in connection with the job he testified: "No. They said that this was a permanent position at Boeing–Vertol and that they would pay for my moving expenses and my family moving expenses and a couple of weeks also expenses in order to get settled." N.T. at 44. Further, when questioned as to what the term permanent meant in relation to his job, plaintiff testified:

> They explained that they would pick up and I would start earning my pension rights from when I was laid off as if I weren't laid off.

> They would provide medical insurance for me and life insurance for me and allow me to contribute to my own account in the savings account that Boeing has every–and at that time after 20 years I was getting four weeks' vacation, so I would start getting four weeks' vacation again.

> That was what recall on the permanent basis meant. N.T. at 46.

It is thus apparent that whatever import was attached to use of the term permanent, it had nothing to do with the length of plaintiff's future tenure with the company.

Finally, plaintiff relies on certain statements made to him by an acquaintance of his at Boeing–Vertol, Harry Spatzer. Spatzer was, at the time just prior to plaintiff's coming to Boeing–Vertol, the director of product support. In summarizing the conversation, Moorhouse testified:

> He said that, "I think they are going to make you an offer." He said, "I wish you would seriously consider it and come back here to Philadelphia," he said, "and whenever anything happens that they run out of work and they need to start laying off people," he said, "that I would pick you

---

**8.** All parties rely on Pennsylvania law as respects the contract claims.

up, so that this is going to be the last move you will ever have to make." N.T. at 64.

Clearly these assurances, which appear to be nothing more than pleasantries from an acquaintance, are not sufficient to rebut the Pennsylvania presumption of terminability at will. Moreover, the testimony provides absolutely no basis to believe that Spatzer purported to be acting on behalf of the company when he spoke to plaintiff. This conclusion is buttressed by his use of the term "I" when speaking of himself and the pronoun "they" when referring to Boeing.

In short, the Court concludes now, as it did at the time of trial, that the evidence and the inferences to be drawn therefrom point so strongly in favor of defendants, the jury could not reasonably have come to a contrary conclusion under Pennsylvania law. See Ryan Distributing Corp. v. Caley, 147 F.2d 138, 140 (3d Cir. 1945).

Plaintiff's reliance on his moving from Seattle, Washington to Philadelphia to provide consideration for a working–lifetime contract is wide of the mark. True it is that such detrimental reliance may serve as consideration to support a contract for working–lifetime employment. Where, as here, plaintiff has not proved the existence of the agreement in the first instance, however, argument concerning adequacy of the consideration is unavailing. Kinsell v. Bethlehem Steel Corporation, Civil Action No. 78–2571 (E.D.Pa. May 11, 1979). Accordingly, the directed verdict entered on the contract claims affords no basis for a new trial.

*(C) Conduct Of The Trial Court.*

■ Plaintiff's contention that bias of the trial court prejudiced his presentation of an effective case to the jury is based on three general grounds. First, he maintains the Court prohibited counsel from effectively making the offer of proof as respects the five plaintiff/witnesses. Second, it is argued that counsel was not permitted to properly address the issues raised by defendants' motion for a directed verdict during oral argument. Finally, plaintiff maintains the Court's rulings on evidentiary questions and comments to counsel with the jury present during trial injected prejudice against him thus requiring a new trial.

In Parts (II)(A) and (B) of this Memorandum, the Court has extensively reviewed the issues raised by both the offer of proof and the motion for a directed verdict, and has found plaintiff's position on neither of these questions persuasive. Therefore, even if counsel's allegation that he was "cut short" during argument is accurate, plaintiff was not prejudiced thereby and a new trial is not required on the basis of the first two grounds noted above.[9]

As to the third ground, that concerning evidentiary rulings and comments in the presence of the jury, the Court notes that plaintiff points to only one specific ruling claimed to be erroneous. (The Court refused to allow counsel to question a defendant as to what he meant by a paragraph in his Answer to the Complaint). N.T. at 474. Not only is the Court convinced that the ruling was correct, but there is also no infirmity in how the ruling was made.[10] Moreover, with respect to other comments, rulings or admonitions by the Court, the jury was instructed:

> Remember at all times that you, as jurors, are at liberty to disregard all comments of the Court in arriving at your own findings as to the facts.

> Sometimes in the trial of a case and in our adversary system there is some di-

---

**9.** The arguments on admission of the plaintiff/witness testimony and on the motion for a directed verdict were held outside the jury's presence, as were most legal arguments during the course of trial. See N.T. at 190, 193, 625–26, 640, 299, and 719.

**10.** There was an objection made and it was sustained. Defendant's observation in its Preliminary Response to Plaintiff's Motion For A New Trial, Docket Entry 70, p. 3 *Conduct of The Trial Judge* And Memorandum By Defendants In Opposition To Plaintiff's Motion For A New Trial. Docket Entry 80, p. 7, III *Plaintiff Has Failed to Demonstrate That The Court's Conduct In Any Way Prejudiced Him,* are consistent with the Court's recollection of the proceedings.

rection to the court, to counsel, to do something, and which counsel may or may not be doing, and you are not to draw any inference against the side to which a direction of the court may have been addressed during the trial of a case.

It is the duty of the attorneys on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. You should show no prejudice against any attorney or his client because the attorneys made objections.

Upon allowing testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated—and this the Court has not expressly stated—the Court does not indicate any opinion as to the weight or effect of such evidence. As stated before, you, as jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all evidence. N.T. at 823–24.

To summarize, The Court finds no ground on which to conclude plaintiff was prejudiced, and the motion for a new trial will, therefore, be denied.