851 F.2d 152
 47 Fair Empl.Prac.Cas. 273,
47 Empl. Prac. Dec. P 38,114,
25 Fed. R. Evid. Serv. 1366
Carl SCHRAND, Plaintiff-Appellee, Cross-Appellant,
v.
FEDERAL PACIFIC ELECTRIC COMPANY, Reliance Electric Company,
Defendants-Appellants, Cross-Appellees.
 Nos. 86-4158, 87-3005.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 1, 1988.
Decided July 5, 1988.
 
 Stephen C. Fitch (argued), Guy R. Humphrey, Szolosi & Fitch, Columbus, Ohio, for defendants-appellants, cross-appellees.
 Bonnie K. Beaman (argued), Parks, Little & Beaman, Brooks C. Parks, Dayton, Ohio, for plaintiff-appellee, cross-appellant.
 Before LIVELY, JONES and MILBURN, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 This is an appeal from a judgment awarding damages to a former employee of the defendant Federal Pacific Electric Company under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq.[1] After approximately 17 years as an employee of Federal Pacific, the plaintiff, Carl Schrand, was terminated in 1983 at age 62. A jury awarded Schrand $41,326 and found that Federal Pacific acted willfully in terminating him. On this basis the district court awarded "liquidated damages," as provided by the Act, doubling the award to $82,652. The district court denied Schrand's request for reinstatement and "front pay," and took under advisement his motion for attorney fees. Both sides have appealed.
 
 
 2
 Federal Pacific has raised three issues on appeal and Schrand has raised one in his cross-appeal. However, we have determined that the district court committed reversible error in admitting testimony of two former Federal Pacific employees regarding the circumstances of their termination. Accordingly, we will deal with other issues raised by the parties only to the extent required to give guidance for a new trial.
 
 I.
 
 3
 Schrand was employed by Federal Pacific in 1966 as a field sales engineer. Although he was named Branch Manager of the Dayton, Ohio office in 1968, he assumed no additional duties. His job was to call on electrical distributors, consulting engineers, electrical contractors and others for the purpose of selling Federal Pacific products to customers and prospects or having them designate these products for their construction projects. The Dayton office never had more than three sales engineers, and during most of his time there Schrand and a secretary were the only employees in the office. In June 1983 Schrand and the secretary began sharing space with the local office of Reliance Electric.
 
 
 4
 In September 1983 William Pierce, the Southern Division Manager of Federal Pacific, advised Schrand that the company had decided to close the Dayton office and cover the Dayton accounts out of the Cincinnati office. Shortly thereafter, Pierce notified Schrand that he would be permanently terminated on October 31, 1983. A twenty-six year old sales engineer in the Cincinnati office was directed to cover the Dayton accounts. This individual began dividing his time between the Cincinnati and Dayton offices, but in January 1984 he began working out of the Dayton office full time. However, in August 1984 Federal Pacific terminated both the replacement sales engineer and the secretary, and closed the Dayton office permanently.
 
 
 5
 Pierce testified that he was directed in mid-1983 to reduce sales expenses in his division and that he and Robert McCormick, the Ohio Valley Regional Manager, decided that the Dayton office should be closed. Both Pierce and McCormick testified that Schrand's age played no part in this decision. There was also testimony that Federal Pacific suffered a serious loss of business after experiencing problems with a major product in 1979. After earning $43,000,000 before taxes in 1978, and $16,000,000 in 1979, Federal Pacific lost money every year between 1980 and 1986. Between 1979 and the end of 1984 the number of Federal Pacific employees in the United States declined by approximately one-third.
 
 II.
 
 6
 Federal Pacific filed a motion for judgment notwithstanding the verdict (JNOV) on the issues of liability and willfulness. We first address the motion as it pertains to the issue of liability under the Act and will deal with the issue of liquidated damages for willful violation of the Act in Part IV below.
 
 
 7
 The district court held that the defendants were not entitled to judgment as a matter of law and denied the motion for a JNOV. The court noted that Federal Pacific maintained that Schrand was terminated solely for economic reasons and that age was not a factor. The court concluded, however, that there was sufficient evidence for reasonable minds to conclude that Federal Pacific's actions were motivated by age discrimination. The court noted evidence that Schrand was the oldest salesman in the division, that in the later years he was consistently the second most successful salesman in the region, that the Dayton office did not close when the plaintiff was terminated, and that the vice-president for sales kept a profile on the retirement base of the company and a chart of the age of its sales employees.
 
 
 8
 In reviewing a district court's denial of a motion for JNOV, we must view the evidence in the light most favorable to the party opposing the motion, and draw from the evidence all reasonable inferences in that party's favor. Chappell v. GTE Products Corp., 803 F.2d 261, 265 (6th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987), and cases cited therein. Thus, we do not "weigh the evidence, pass on the credibility of witnesses, or substitute [our] judgment for that of the jury." Id. Applying this standard of review, we find that the district court properly denied Federal Pacific's motion. The evidence of a violation was not overwhelming, and Federal Pacific articulated a non-discriminatory reason for Schrand's termination. Nevertheless, there was admissible evidence from which an inference could reasonably be drawn that age was "a factor" in the decision to discharge Schrand. Id. at 266 (Plaintiff has "only to show that age was 'a,' and not 'the,' determining factor in the employer's personnel decision.").
 
 III.
 A.
 
 9
 At a pretrial conference Federal Pacific's counsel advised the district court that he objected to the proposed introduction of testimony by two former sales employees of Federal Pacific, from other divisions and regions, concerning the circumstances surrounding their terminations. After denying Federal Pacific's motion in limine the district court permitted Robert Owens and Thomas Dolan to testify. Federal Pacific renewed its objections when these witnesses were called at trial, and made a motion for a mistrial after their testimony was received. Both Owens and Dolan testified that when they were terminated they were told that it was in part because they were too old.
 
 
 10
 Robert Owens was a field sales engineer, the same position that Schrand held, from 1967 to 1982, when he was terminated at age 59. Owens worked in Federal Pacific's Albuquerque, New Mexico sales office from 1977 to 1982. He testified that the regional manager who notified him that he was terminated said that "because of lack of progress they were going to close the Albuquerque office." That office was closed about a year after he was fired, and after his termination the office's accounts were handled by a younger employee. Owens testified that when he requested an opportunity to transfer, the regional manager said that he could not do so because "there was none available and I was too old."
 
 
 11
 Thomas Dolan worked in Federal Pacific's Newark, New Jersey office as vice-president for industrial relations. He testified that the company had personnel policies that he helped establish. Under one policy marginal and poor performers were terminated first when a reduction was necessary. After these employees were eliminated the policy directed that further terminations be based on seniority with the more senior employees being retained. Dolan was terminated in 1983 at age 54. He testified that his direct supervisor, the general manager, and "the top operating officer at Federal Pacific," advised him of his termination. Dolan stated that when he asked why a scheduled relocation had been rescinded he was told, "It costs too much money, your wife works, and you're too old."
 
 
 12
 Federal Pacific cross-examined Dolan and called as witnesses the officials who notified Owens and Dolan of their terminations. Both testified that the terminations were made as part of a reduction in force brought about by adverse business conditions, and both denied telling the employees that age was a factor and denied that age was in fact a consideration.
 
 B.
 
 13
 Federal Pacific objected on several grounds to the testimony by Owens and Dolan that they were told they were terminated because they were too old: (1) that it was inadmissible hearsay; (2) that it was irrelevant; and (3) that the danger of unfair prejudice far outweighed any probative value the evidence might have. The district court did not rule on the hearsay objection, but found the testimony "highly relevant." We disagree.
 
 
 14
 Relevant evidence is defined in Fed.R.Evid. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 provides that evidence which is not relevant is inadmissible. Rule 403 provides that evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...."
 
 
 15
 In Chappell v. GTE Products Corp. this court upheld the district court's exclusion of statements by an employer's agents which purportedly showed an age bias in the company's personnel practices. We found the comments "too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination," citing Haskell v. Kaman Corp., 743 F.2d 113, 120 (2d Cir.1984). Chappell, 803 F.2d at 268 n. 2. In Haskell the court held that testimony of former employees of the defendant about the circumstances surrounding their terminations and those of other employees was not relevant to the question of whether the plaintiff was terminated for age-related reasons and, in addition, should have been excluded under Rule 403. The court further found that the "strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that defendant had laid him off because of his age." 743 F.2d at 122 (quoting Moorhouse v. Boeing Co., 501 F.Supp. 390, 393 n. 4 (E.D.Pa.), aff'd mem., 639 F.2d 774 (3d Cir.1980)). Thus, the court concluded that the error could not be considered harmless. Id.
 
 C.
 
 16
 The testimony of Owens and Dolan about the alleged statement to them that they were being terminated because they were too old should have been excluded. First, it was not relevant. Pierce, who made the decision to terminate Schrand, was not involved in the decision to terminate either Owens or Dolan. Neither of the witnesses worked at the time of termination in the Ohio Valley Region or the Southern Division of Federal Pacific. Further, Pierce testified that the Cincinnati office took over the accounts of the Dayton office. There was no such testimony about consolidation of branches with respect to the termination of Owens and Dolan. Thus, there was no evidence from which the alleged statements of the witnesses could logically or reasonably be tied to the decision to terminate Schrand. This is especially so in light of the fact that Schrand has expressly stated that he was not attempting to establish a pattern and practice case. The fact that two employees of a national concern, working in places far from the plaintiff's place of employment, under different supervisors, were allegedly told they were being terminated because they were too old, is simply not relevant to the issue in this case. Schrand made no claim that he was told he was being terminated because he was too old. He relied entirely on circumstantial evidence.
 
 
 17
 We also conclude that the evidence should have been excluded under Rule 403. With no other direct evidence of age discrimination in the case, the impact of the two former employees' testimony would be great. Thus, even if that evidence were relevant, we believe its probative value was substantially outweighed by the danger of unfair prejudice flowing from its admission. Although it had no direct bearing on the issue to be decided--whether Schrand was discharged because of his age--this testimony embellished the circumstantial evidence directed to that issue by adding "smoking gun" type evidence. It offered an emotional element that was otherwise lacking as a basis for a verdict in Schrand's favor. See Notes of Advisory Committee to Rule 403.
 
 
 18
 In addition to creating prejudice that substantially outweighed its probative value, the testimony tended to confuse the issue by focusing the jury's attention on two totally unrelated events, a consideration under Rule 403. If the jury was convinced that the testimony of Owens and Dolan was truthful, there was a distinct danger that the jury would assume a connection that was never proven between the terminations of the two witnesses and that of Schrand.
 
 D.
 
 19
 This court applies an abuse of discretion standard in reviewing decisions of a trial court on the admission of evidence. Mitroff v. Xomox Corp., 797 F.2d 271, 275 (6th Cir.1986). In the context of an evidentiary ruling, abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. Hill v. Bache Halsey Stuart Shields, Inc., 790 F.2d 817, 826 (10th Cir.1986). In view of our decision in Chappell, where we followed Haskell in finding similar testimony to lack relevancy and to create a danger of prejudice that would substantially outweigh any probative value it might have, we find that the district court did commit a clear error in admitting the "too old" statements. The testimony of Dolan concerning company policies was admissible, however, as it tended to show that the policy of retaining more senior employees during a period of reduction was not followed in Schrand's case. Thus it was relevant to the central issue in the case.
 
 
 20
 We cannot hold the error in this case harmless. As in Mitroff, the inadmissible testimony was "arguably ... the strongest evidence in plaintiff's favor at trial." 797 F.2d at 277. Additionally, this is a close case. Federal Pacific had suffered losses for several years before Schrand was terminated, and its national work force had been reduced by one-third. Although there was some delay, the Dayton sales office was eventually closed and its operations were combined with those of the Cincinnati office.
 
 
 21
 Justice Antonin Scalia, then a circuit judge, discussed the harmless error doctrine in the context of error in admission of evidence, in Jordan v. Medley, 711 F.2d 211 (D.C.Cir.1983). He wrote:
 
 
 22
 We must ask, finally, whether wrongful admission of the testimony affected appellant's "substantial rights," see 28 U.S.C. Sec. 2111 (1976); Fed.R.Evid. 103; Fed.R.Civ.P. 61; or was instead harmless error. That inquiry involves an assessment of the likelihood that the error affected the outcome of the case. See United States ex rel. D'Agostino Excavators, Inc. v. Heyward Robinson Co., 430 F.2d 1077, 1083 (2d Cir.1970), cert. denied, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971). As the Supreme Court has described the test: "[I]f one cannot say, with fair assurance, ... that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). Application of this test is highly sensitive to the unique context of the particular case, including the one-sided or closely balanced nature of the evidence bearing upon the issue which the error arguably affected, see id., at 763, 66 S.Ct. at 1247; Carona v. Pioneer Life Ins. Co., 357 F.2d 477, 480 (5th Cir.1966); and the centrality of that issue to the ultimate decision, see Charter v. Chleborad, 551 F.2d 246, 249 (8th Cir.), cert. denied, 434 U.S. 856, 98 S.Ct. 176, 54 L.Ed.2d 128 (1977).
 
 
 23
 Id. at 218-19 (footnote omitted). Applying these considerations to the facts in this case, it is clear that the error was not harmless.
 
 IV.
 
 24
 Using a special verdict form, the jury specifically found that Federal Pacific willfully discriminated against Schrand because of his age. Section 7(b) of the ADEA, 29 U.S.C. Sec. 626(b), provides that "liquidated damages" may be awarded in cases of "willful" violation of the Act. Liquidated damages are defined by reference to the Fair Labor Standards Act (FLSA) as an amount equal to the losses sustained in lost wages and other benefits. 29 U.S.C. Sec. 216(b). Neither the ADEA nor the FLSA defines "willful." However, the Supreme Court provided standards for determining willfulness in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), an ADEA case. The Court stated that a violation is willful if an employer either knows its conduct is prohibited by the Act, or acts with reckless disregard for whether it is prohibited. Id. at 126, 105 S.Ct. at 624. Although liquidated damages are punitive in nature, id. at 125, 105 S.Ct. at 623, a plaintiff is not required to show that an employer acted with evil motive or bad purpose in order to establish willfulness. Id. at 126 n. 19, 105 S.Ct. at 624 n. 19. Since all employers are required to post ADEA notices mere knowledge of the potential applicability of the Act is insufficient. An employer may avoid an award of liquidated damages by showing good faith and reasonable grounds for believing it was not in violation of the Act. Id. at 128 n. 22, 105 S.Ct. at 625 n. 22.
 
 
 25
 Thurston was a disparate impact case, and courts have had difficulty applying its holding to disparate treatment cases involving individual personnel actions where intent to discriminate must be proven to establish liability. The problem arises in differentiating intent and the requirements of willfulness. See, e.g., Dreyer v. ARCO Chemical Co., 801 F.2d 651, 658 (3d Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987) (requires a showing of "outrageous" conduct to establish willfulness); Lindsey v. American Cast Iron Pipe Co., 810 F.2d 1094, 1099-1100 (11th Cir.1987) (rejects "outrageous conduct" standard for a case-by-case determination of good faith question); Gilliam v. Armtex, Inc., 820 F.2d 1387, 1390 (4th Cir.1987) (something more required than "a retrospective finding that there was a simple violation of the statute"); Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1551 (10th Cir.1988) (adopts a middle ground between Dreyer and Lindsey, a willful violation occurs when age is the predominant factor in employer's decision).
 
 
 26
 Congress clearly intended that courts would recognize a two-tiered approach in awarding damages. For a simple violation, the plaintiff receives compensatory damages; for a willful violation, the plaintiff receives liquidated damages to punish the employer. In this case the district court instructed the jury as follows:
 
 
 27
 A violation is willful when the defendant knew or showed reckless disregard as to whether its conduct was prohibited by the Age Discrimination in Employment Act.
 
 
 28
 A violation is not willful when the defendant acts reasonably and in good faith.
 
 
 29
 This instruction embodied the requirements of Thurston for a finding of willfulness and submitted a good faith defense recognized in Thurston and our decision in Whitfield v. City of Knoxville, 756 F.2d 455, 463 (6th Cir.1985).
 
 
 30
 We conclude that the district court erred in basing its willfullness instruction only on Thurston, and we adopt the Tenth Circuit's formulation in Cooper v. Asplundh Tree Expert Co. This instruction best "preserves the congressional intent to retain a two-tiered liability scheme[.]" Cooper, 836 F.2d at 1551. The Thurston instruction does not do so in a disparate treatment case where proof of intent is required to satisfy the requirements of the first tier. Accordingly, the district court should have instructed the jury that it could find the defendant's conduct willful only if age was the predominant factor in the decision to terminate the plaintiff.
 
 
 31
 We have examined the evidence both pro and con and believe it was sufficient to warrant submitting the issue of willfulness to the jury. The district court denied Federal Pacific's motion for judgment notwithstanding the verdict on this issue. Viewing the evidence in the light most favorable to Schrand, and drawing from the evidence all reasonable inferences in his favor, we cannot conclude that the district court committed reversible error in denying the JNOV motion on the willfulness issue. There was evidence from which the jury could conclude that age was the predominant factor in Federal Pacific's decision to terminate Schrand. If the evidence is substantially the same upon retrial, the district court will submit this issue under instructions as approved herein.
 
 V.
 
 32
 Schrand cross-appeals from the district court's denial of front pay--an award for future earnings. We have held that front pay "is a remedy available to the trial court for use, in its discretion, in fashioning relief" in an ADEA case. Davis v. Combustion Engineering, Inc., 742 F.2d 916, 923 (6th Cir.1984). Further, "the purpose of the Act is to make people whole and that which makes people whole is a matter for the discretion of the trial court under the facts and circumstances of the individual case." Id.
 
 
 33
 Schrand was terminated on October 31, 1983, at the age of 62. The Dayton office where Schrand had worked was permanently closed on August 31, 1984. The district court concluded that the evidence indicated that even if Schrand had not been wrongfully terminated in October 1983, he would have been terminated for a nondiscriminatory reason on August 31, 1984, when the office permanently closed. The district court also stated that the jury verdict of $41,326 supported a finding that the jury awarded Schrand lost earnings and benefits between October 31, 1983, and August 31, 1984, and thus that the jury impliedly found that the plaintiff would have been terminated when the office permanently closed. For these reasons, the court held that Schrand was "not entitled to any further damages in the form of front pay or reinstatement." We cannot say that the district court abused its discretion in making this determination.
 
 
 34
 The judgment of the district court is reversed on appeal and affirmed on cross-appeal, and the case is remanded for a new trial consistent with the holding herein.
 
 
 
 [1]
 The defendant Reliance Electric Company was the sole owner of Federal Pacific during the time covered by this case. The defendants will be referred to collectively as Federal Pacific